**KING et v CLARK et**

Circuit Court, Allen County

Decided March, 1903

▮▮▮▮▮▮▮▮▮▮

Ritchie & Ritchie, Lima, and Ridenour & Halfhill, Lima, for plaintiff in error.

Kent W. Hughes, Lima, for defendant in error.

## OPINION

By NORRIS, J.

The original action, to the result of which in the Common Pleas Court defendants below as plaintiffs here prosecute error, arises thus:

Clark and Goodrich, as plaintiffs, in the trial court claim in their petition that on and before December 5, 1898, they were the owners of the 1/16th part, and had in their possession, of a ticket in the lottery of the Beneficiencia Publica, which is the name of a lottery scheme then conducted in the City of Mexico. The number of the ticket, of which this 1/16 was a part, was 33477. This ticket on the 24th day of November, 1898, drew and to the owners thereof was due and payable the price of Sixty Thousand Dollars in money; the 1/16 part thereof due Clark and Goodrich was $3,750.

On the 25th of November, 1898, and on divers days thereafter, defendants King and Pyle told and represented to the plaintiffs that said ticket had only drawn the price of $20 and no more, and that their 1/16 part of the prize drawn by this ticket was $1.25 and no more than that amount. This statement and representation was made to plaintiffs by defendants for the purpose of deceiving and defrauding plaintiffs of their 1/16 part of said Sixty Thousand Dollars prize. It was false and was known by defendants to be false when made. Plaintiffs were ignorant of the facts, had no means of ascertaining the truth, and believed the representation to be true.

About the 5th of December, 1898, defendants with the same deceit and with the same intention to defraud and cheat plaintiffs of their 1/16 of said Sixty Thousand Dollar prize, presented to plaintiffs a false and forged list, purporting to show and represented by the defendants as showing the true number that had drawn prizes in said lottery and the true amount of prizes drawn. By this false list ticket No. 33477 was not shown as having drawn the prize of Sixty Thousand Dollars, but it was shown by said false list as having drawn $20 and no more. Plaintiffs did not know and had no reason to suspicion that said list was a false and forged list, but believed the same to be a genuine and truthful showing of the distribution of prizes. And thus led to believe and thus believing, on the 13th of December, 1898, they delivered said 1/16 of said ticket to the defendants, who, on the 13th day of December 1898, presented said 1/16 of said ticket to said lottery company and received therefor the $3,750 which was due thereon and which was then the money of plaintiffs. That defendants still retain said sum of money and refuse to pay it over to the plaintiffs, and by the action they seek to recover this money from the defendants.

To this petition defendants each filed his general demurrer. These demurrers the trial court overruled. Defendants then each filed to the petition his separate answer and each therein generally deny the allegations of the petition.

These declarations and denials were submitted to a jury in the Common Pleas Court, which resulted in a verdict for the plaintiff for the amount claimed with interest.

Each defendant filed his motion for a new trial. Each motion was overruled, and in their joint petition in error they assign, by separate assignments as to each plain-

tiff in error, as cause for reversal, that the trial court erred in,

1st: Overruling the motions for new trial;

2nd: Because the court erred in overruling the general demurrers to the petition;

3rd: Because the petition does not state facts sufficient to constitute a cause of action against either of the plaintiffs in error;

4th: Because of error in the charge as given;

5th: Error in refusing to charge as requested by said respective plaintiffs in error;

6th: Because the court erred in admitting evidence offered by plaintiffs;

7th: And erred in rejecting evidence offered by the defendants and each in his behalf;

8th: The court erred in refusing to allow the plaintiffs in error and each of them the right to examine the witnesses Clark and King as to any matter brought out by inquiry of plaintiffs upon the cross-examination by plaintiffs of these witnesses;

9th: And because of denial by the court of the right to re-examine these witnesses as to matters brought out upon their cross-examination by the plaintiff;

10th: Because the judgment was for the plaintiffs; and for other errors in the record, and for these the plaintiffs in error demand reversal.

The general demurrers to the petition were urged against it, and are here urged as fatal to it, because it is claimed that upon the face of that pleading the plaintiffs base their recovery upon their ownership of the lottery ticket; that it being illegal to own a lottery ticket, and a lottery ticket not being the subject of ownership, that no property rights attach to it or are acquired in it, and no enforceable rights arise concerning it or under it or because of it, and that fraud practiced in regard to it and the possession of it is not iniquity, and that falsehood and deception and misrepresentation savor not of vice when applied to a lottery ticket or the scheme of which it is a part. The court is in accord with defendants as to this proposition, and all this is true as it applies to the game of chance and the things hoped for in the game of chance; and nothing proceeded from the possession and ownership of this lottery ticket; no legal or equitable claim was created against those who conducted the lottery in favor of the one who bought the ticket. But that is not this case. This action is not an action between the plaintiffs and the Beneficiencia Publica of the City of Mexico to enforce the promise made in any

of its tickets and to compel the payment of a sum of money appearing as a prize at one of its lottery drawings. The lottery ticket does not figure here as the proximate right of recovery and no claim is based upon it. This is an action concerning $3,750 in money. The vice of the lottery and lottery ticket does not follow this fund. The Beneficiencia Publica had good title to this $3,750. So good was its title that its title could not be disturbed by the lottery or the lottery ticket or any purported claim because of either. Whatever may have been the moving cause, the Beneficiencia Publica had the right to part with its title and parting with it that company had the right and power to pass its ownership of this money to whomsoever it might intend to receive it. It is not in question that it was the intention and purpose of the lottery concern to pass over to the holders of its tickets the ownership of the prizes corresponding with this ticket number. It is conceded that these plaintiffs held this 1/16 of ticket No. 33477 when the drawing was had and the prize was awarded and the ticket had performed its function, whether its office was legal or illegal. It had pointed out to the Beneficiencia Publica the persons to whom it intended to and did pass its bona fide title and ownership of $3,750.

The illegal contract with the lottery company was ended, and this fund of $3,750 came into existence, held by the company until it could identify the proper party to whom it intended to pay it. The whole sequel shows this to have been the condition and the Beneficiencia Publica seems to have considered itself the voluntary trustee of this fund and held it for the holder of the ticket until payment could be made. This $3,750 then had been drawn in a lottery by the plaintiffs and the lottery company held it awaiting plaintiffs demand for it. These defendants and neither of them drew this money in a lottery nor got it because of a scheme of chance. They got it because they impersonated the true holder of the company's ticket, after the prize was drawn and awarded; after the contract, illegal as it might have been, was deemed by the lottery company to be executed and the fund was set apart waiting to be paid to the true holder of the ticket. This $3,750 was no longer a prize to be contended for in a game of chance. It was a fund awaiting its owner.

All this is in substance alleged in the petition, and more. After all I have recited, it is alleged that the defendants, to obtain possession of the ticket, and well knowing

all their representations were untrue and that their every act was falsehood, of which plaintiffs were ignorant, made the fraudulent representations and forged and uttered to plaintiffs the false and forged list and obtained possession of the ticket; and having so, and by this means, obtained it falsely, to the lottery company represented themselves to be the true holders of the ticket and the parties truly designated by it to whom payment of the fund should be made as intended by the Beneficiencia Publica. These allegations of the petition are, by the general demurrers, admitted to be true. How can these wrongdoers then, who, by forgery and fraud, their forgery and their fraud, conceived and practiced and executed after the $3,750 came into existence as a fund—and against whom recovery is sought by the parties for whom it was held, so set apart and held by one who had title to it and had the right to so set it apart and so hold it,—how can they claim that the petition upon its face makes their defense, by showing that the creation of the fund and its payment could not have been enforced because of public policy and the criminal law? We are not of opinion that the objections to the petition raised by the demurrers are well grounded and so find no error in overruling them.

It is claimed that the court erred in refusing to allow the plaintiffs in error, and each of them, the right to examine the witnesses Clark and King as to any matter brought out by inquiry of plaintiffs upon the cross-examination by plaintiffs of these witnesses, and because of denial by the court of right to said defendants and each of them to re-examine these witnesses as to matters brought out upon their cross-examination by the plaintiffs.

The defendants, each of them, were called by the plaintiffs to the witness stand for purposes of cross-examination and were so examined by plaintiffs' counsel. This privilege, which the statute by §5243, gives to an opposite party, is to elicit testimony which will tend to sustain the issue upon the part of the party making the cross-examination, and may not be pursued to the extent and for the purpose of discovering, under the guise of cross-examination, what the party may say when he takes the witness stand in his own behalf. This cross-examination of the adverse party being that the party calling may sustain his case by the testimony of his adversary, there

should be fairly accorded to the party called the right of full and proper explanation, and in that behalf it is legitimate that his counsel, if the occasion require it, call his attention to such matters as further explanation would make clear. But this right was accorded to Pyle, who was given full opportunity to and did make full explanation. Pyle does not object and reserves no exceptions in that behalf. But this right does not seem to have been fully accorded to the defendant King when so called for cross-examination, and had the case rested without his appearance as a witness in his own behalf, its refusal to him would have been ground of prejudicial error. But upon his examination in chief, when he became a witness in his own behalf, the right was accorded to him and he made full explanation of all matters touching which inquiry was made of him upon his cross-examination, and all facts of which he desired to speak were fully given by him to the jury. We are of opinion this purged the record of error in that regard, and fully and without prejudice saved the rights of defendant King in that behalf. Having had full opportunity and having made full explanation in cross-examination, Pyle did not go upon the witness stand in his own behalf in chief.

It is not contended that the 1/16 of the ticket in question, 1/16 of ticket 33477, was bought of defendant Pyle. It is further claimed by the defendants that this 1/16 was to have been paid for one day at least before the drawing, and that the ticket was not paid for. This claim of the defendants is not sustained by the evidence, but upon the contrary it clearly appears, by a preponderance of the evidence, that this 1/16 was paid for and that nothing of its purchase price was unpaid as claimed by the defendants.

The issue as to the ownership of this ticket and as to whether or not its purchase price had been paid, was fully put to the jury, both by the evidence and by the court's charge, and with all we find no error in the charge as given or in the refusal to charge as requested. And in the admission and rejection of evidence there appears no error in the record.

That the ticket was bought and paid for is sustained by the evidence. That the frauds were perpetrated and possession obtained of the ticket and payment of the money thus persuaded, is equally true, $3,750 representing 1/16 of the Sixty Thou-

sand Dollars accredited to ticket 33477 in the Beneficiencia Publica.

It appears from the evidence that one Otto Thompson of Rockford, Ohio, purchased a 1/16 of ticket No. 33477. Defendant Pyle got possession of this 1/16 also. $3,744 of the funds of one of these tickets came to defendant, Mr. King, by draft on New York. This draft was sent to him by Mr. Pyle from San Antonio, Texas. It appears from the evidence of Pyle that he gave the Thompson ticket to King to collect. Was afraid of his creditors. He told Mr. King he was afraid his creditors would realize if they knew of this Thompson ticket, and Mr. King agreed to have it cashed in his, King's name. Pyle says he took the ticket in controversy, designated as the Clark ticket, to San Antonio with him. That when he presented it for payment they said to him—the agent of the Beneficiencia Publica said to him that payment on the Thompson ticket had been stopped, etc. It seems that Pyle, out of the funds of these two tickets, settled the Thompson matter and sent to Mr. King $3,744 by draft. Mr. King was collecting it for Pyle to keep it out of the hands of Pyle's creditors. King says he had no claim on it; his only object was to keep it away from Pyle's creditors. Pyle was in San Antonio, Texas with this $3,744 in cash in his pocket, safe from the hands of his creditors, yet it was sent to Mr.King by draft. Pyle did not keep the money when he had it but sent it to King by draft on New York. King and Pyle both swear that King paid it to Pyle when Pyle came back. Clark and Goodrich both swore that after they had read an article in the Lima paper to the effect that Mr. King had received the money on a 1/16 of ticket 33477 in this lottery, they went to King and said to King—((See page 30 of bill of exceptions). Patterson swears, (See pages 42 and 43 of bill of exceptions).

It seems Mr. King furnished Pyle the money which sent him to Chicago where the forged list was printed, and to San Antonio where the money was secured.

In the face of this evidence, offered by the plaintiff, King and Pyle both swear that King had no interest and got none of the funds here in controversy. And it may be true that he did not, and it may not be true that he did not, and thus from the conflicting evidence in that regard presented in the case, and there being such a conflict, this court, at this distance from the witnesses as they appeared before the jury then, is not at liberty to disturb the verdict on the weight of the evidence and as manifestly against the weight of the evidence.

No error to the prejudice of plaintiffs in error apparent in the record, the judgment is affirmed at the costs of the plaintiff in error and the case is remanded for execution.

DAY and MOONEY, JJ, concur.