BARNETT, Plaintiff-Appellee, v. HILLS, et., Defendants-Appellants.

Ohio Appeals, Second District, Franklin County.

No. 4061. Decided October 30, 1947.

Russ Bothwell, Columbus, Cowan, Adams & Tyler, Columbus, for plaintiff-appellee.

Clifford L. Rose, Robert P. Duncan, Carl W. Lortz, Columbus, for defendants-appellants.

**OPINION**

By MILLER, J.

This is an appeal on questions of law from the Court of Common Pleas of Franklin County, Ohio. The action was one for personal injuries growing out of a collision in which a taxicab, owned and operated by the appellants was involved and in which the plaintiff was a passenger. The amended petition alleges that "on September 1st, 1945, at about 7:15 P. M., plaintiff was a passenger in the taxicab of the defendant being driven east on Reeb Avenue in the City of Columbus, Ohio,

at a speed of 35 miles per hour; that said cab collided with a car being operated north on South Fourth Street in said city and that defendant drove its cab into the path of said northbound car. Said petition alleges that plaintiff sustained multiple bruises, cuts, contusions and abrasions about her back, chest, body and extremities and particularly on her right arm and elbow; that at the time of said injury plaintiff had a nondisabling congenital abnormality in the structure of the lumbar portion of her back which was unkown to her and which had never before caused her pain or discomfort; that said injury to her back caused a separation and displacement of the lumbar vertebra of her back, a condition known as spondylolisthesis, from which she has been suffering since the date of said injury and which she will continue to suffer for the rest of her natural life; that she sustained a dislocation of the right sternal clavicular joint, the distal end of the clavicle being displaced anteriorly from its normal articulation into the sternum; and that she sustained a tearing injury of the sternal clavicular ligaments; that because of said injuries she has a disfigured chest and collar bone and flat left breast; that her posture and ability to walk in a normal way have been permanently changed in that she has a high flat left shoulder and a prominent low right shoulder, a marked indentation over the right hip and a crooked spine which curves to the left opposite the ninth rib with a secondary curve to the right center at about the fourth lumbar, all of which is permanent; that she sustained general muscular and ligamentous strain and suffered severe physical and nervous shock and has suffered, since said injuries and by reason thereof, pain and will so suffer in the future as long as she lives; that by reason of said injuries she has been rendered sore, sick and lame and has permanently lost her ability to work and earn a livelihood or discharge the ordinary duties of a housewife in the keeping of a home and bearing and raising children; that at the time of said injury she was 24 years of age, in excellent health and employed regularly."

An answer was filed by the defendants which was withdrawn at the opening of the trial and the liability of the defendants was admitted.

The first six assignments of error charge, in substance, that the verdict, which was for $17,500.00, is against the manifest weight of the evidence, excessive and was given under the influence of passion and prejudice.

The record discloses that the plaintiff was one of four people riding in the back seat of a taxicab and that when the cab collided with another automobile she was thrown from one

side to the other, and then thrown to the floor of the cab, and that two of the other passengers were thrown on top of her. The plaintiff got out of the cab immediately after the injury, was upset, nervous, felt pain in her back and in her arm. She was then taken to St. Francis Hospital where she remained for several hours, where anticeptics were applied, her back was rubbed and then taped up. The records of the hospital were admitted in evidence and showed that plaintiff was admitted to the hospital September 1st, 1945, at 8:00 P. M., and that she was suffering with an abrasion and injury to the back and right arm. It described her condition as fair.

The exhibit shows further that on September 3 she returned to the hospital for a redressing. It showed further that she was suffering from tenderness, spastic muscles on the right, some scoliosis on the right, possible fracture of transverse process, and that she was requested to return for X-Ray. She had no further medical attention until October 9, 1945, when she was examined by Dr. F. B. Harrington of Steubenville, Ohio. He stated that she complained to him about an aching back, pain about the angle of the scapula, pain around the lumbar region, and also in her right shoulder. He diagnosed her injury as a dislocation of the sternoclavicular joint on the right side and a displacement of the lumbar vertebra, for which he prescribed a back brace.

The plaintiff testified that she has pain in the center of her back on down the back of her legs and from her shoulder down her arm; that she does not rest at night; that she cannot sleep straight on her back, but must sleep upon her side; that her arm is useless, being unable to pick up anything; that when she stands on the bus with her arm holding the bar, her back goes out of place at times; that at various times she is awakened in the middle of the night with severe pain in her back which requires the application of a heating pad.

At the time of the injury she was a stenographer making $2100.00 per annum, and that after various deductions she had approximately $1800.00 left. Since the injury she has tried to do stenographic work, but after four weeks she was compelled to quit and has not been able to work since. She testified that before the injury she had no trouble with her back or arm; that she played tennis, bowled, swam, played basketball in high school, did roller-skating and horseback riding. Since the injury she has not been able to engage in any of these activities. She was examined in 1943 for employment with the O. P. A. and nothing was found to be wrong with her.

The record contains the testimony of several physicians

that she was suffering from a dislocation of the collar bone, a prominence in the back in the region of the lumbar vertebra, tenderness in the lumbo-sacro junction, and a slight depression in that area; that an X-Ray examination disclosed a sliding forward of the lumbar vertebra on the sacrum, from an eighth to a quarter of an inch; that the sliding forward makes tension and pressure on the nerves from the spine and narrows the hole out of which they come. The particular vertebra involved has the largest nerve and the smallest opening in a normal case so that it takes less irritation there than in other areas. Her condition was diagnosed as chronic dislocation of the sternoclavicular joint on the right, right brachial neuritis, and spondylolisthesis. These conditions were described as painful and disabling and that the same were permanent.

This testimony discloses further that there was a direct relationship between the injury and the disabilities just described; that the only possible relief for the back disability was an operation wherein a piece of bone would be taken from the leg and grafted into the spine.

The defense offered medical testimony which was in conflict with the testimony offered by the plaintiff and which we feel it is not necessary to relate, for when there is a conflict the question becomes one solely for the jury. The verdict should not be disturbed by a reviewing court as against the weight of the evidence if such verdict is supported by any competent credible evidence, even though the reviewing court might, if acting as original triers of the fact, have reached a different conclusion. 2 O. Jur., Appeal and Error, Sections 666, 667, Pages 759 & 761. The value of the pain and suffering of the plaintiff, both past and prospective, her probable loss in the nature of future earnings, were questions peculiarly for the jury. We cannot say that the verdict was at such a figure as to indicate passion and prejudice of the jury, or that it was against the manifest weight of the evidence. See also King v. Clark, 24 Abs. 78; Myers v. Bronart Co., 28 Abs. 260.

The appellants contend further that error resulted from irregularities and misconduct on the part of plaintiff's counsel and the prevailing party. The record discloses that upon a recess of fifteen minutes being announced by the Court, Juror No. 6 was requested to remain in the court room, and the following occurred:

"MR. BOTHWELL: I would like to ask Number 6 juror to remain in the room, please. Would you give us your name, please.

A. Garnet.

MR. BOTHWELL: You are No. 6 juror?

A. Yes.

MR. BOTHWELL: It has been repeated to this Court that I engaged in a conversation with you in the hallway.

A. No, you said 'Good morning'.

MR. BOTHWELL: Was that all?

A. That was all.

MR. BOTHWELL: Thank you.

JUDGE DUNCAN: Well, that was not the representation to me.

MR. LORTZ: If that is all you want with this—

MR. BOTHWELL: That is all, it was represented, you fellows represented here to the Court—

MR. LORTZ. Just a minute—I want at this time to make a motion to withdraw a juror and declare a mistrial for such misconduct.

THE COURT: The motion will be overruled.

MR. BOTHWELL: Well, to get it into the record here, Judge Duncan represented to the Court in my presence yesterday afternoon that I had been seen engaged in a conversation with No. 6 juror in the hallway.

JUDGE DUNCAN: That is not at all what Judge Duncan said. Now, I will state for the record what I said. I said it had been represented to me that as No. 6 juror left the court room, while in the court room she made some remark to you, and I asked you if she did, and you said, 'No', and I said nothing about the hallway, did I, Judge Clifford, you heard the conversation?

THE COURT: Well, there was a little more to it, that is my recollection, but there was a remark of Mr. Bothwell about assisting the woman, No. 5, who had tripped over the witness chair first."

From this incident we cannot conclude that there was any misconduct on the part of plaintiff's counsel. We feel that it was proper that Mr. Bothwell relate the incident to the Court and have the matter passed upon then and there, for had it been otherwise the appellants would have had an opportunity to set the same up as a ground for a new trial. We feel that Mr. Bothwell did not act with any motive other than to protect himself and to protect the record. The trial court's action in overruling the motion to withdraw a juror and declare a mistrial was proper.

The appellants further complain that Mr. Bothwell inferred in a question to their witness Dr. Albert Smith, that Dr. Smith and Mr. Rose, one of the attorneys for the appellants, worked regularly for appellants. This question was not objected to and cannot be the ground for error proceedings.

We find no error in the admission of evidence. The questions specifically objected to related to certain hypothetical questions and answers for the reason that certain of the questions assumed the speed of the taxicab to be 35 miles per hour, the appellants contending that the record is silent as to its speed. It will be noted that the amended petition pleaded the speed of the taxicab to be at 35 miles per hour. The appellants having withdrawn their answer this allegation was not denied.

The last assignment of error is that the Court erred in submitting a special charge of the plaintiff to the jury. The record discloses that the plaintiff's counsel submitted special instructions in writing which were given to the jury by the Court before argument. The charges given in part recited,

"In determining the amount it is your legal duty to take into consideration what the evidence, by its greater weight shows upon the following proposition. * * *."

Appellants contend that the degree of proof is a preponderance of all the evidence. The term as used by the court, "greater weight", has the same legal significance as the word "preponderance". In 17 O. Jur., Section 308, p. 390, we find the following:

"By preponderance of the evidence is meant the greater weight of evidence."

Also, in the case of **Travelers Insurance Co. v. Gath, 118 Oh St at p. 261:**

"This court has steadfastly adhered to the rule established by courts generally that a preponderance of the evidence means the greater weight of evidence. This rule is plain and simple and involved in no difficulty."

Counsel for appellants has cited several other instances

which it contends were erroneous and prejudicial, but which we do not deem worthy of any special comment.

We find no error in the record and the judgment is affirmed.

WISEMAN, PJ, and HORNBECK, J, concur.