**JORDAN et al., Appellants and Cross–Appellees,**

**v.**

**ELEX, INC., Appellee; City of Cincinnati, Appellee and Cross–Appellant; Langenheim and Thomson Company et al.**

[Cite as *Jordan v. Elex, Inc.* (1992), 82 Ohio App.3d 222.]

Court of Appeals of Ohio,
Hamilton County.

No. C–910223.

Decided August 19, 1992.

224

*Gary M. Stern,* for plaintiffs-appellants and cross-appellees.

*Edward P. Brueggeman,* for defendant-appellee Elex, Inc.

*Fay D. Dupuis,* City Solicitor, and *William M. Gustavson,* for defendant-appellee and cross-appellant city of Cincinnati.

*Per Curiam.*

On March 3, 1987, plaintiff-appellant Lauren S. Jordan was injured while she was crossing Vine Street at the crosswalk in the middle of the block between Sixth and Seventh Streets. The week before the accident, portions of the street surface had been excavated in connection with defendant-appellee city of Cincinnati's ("city") improvement project known as "The Cincinnatian Hotel Streetscape Project." Large steel plates weighing between 1,000 and 1,500 pounds were laid across the street, including the crosswalk area, by defendant-appellee Elex, Inc. ("Elex"), an electrical subcontractor on the

project. When traffic passed over the plates, they bounced. In order to minimize the movement of the plates and to reduce the resulting noise, the plates were secured with metal pins and triangular wooden wedges. Eventually, the flow of traffic over the plates caused the wedges to become loose and the plates would have to be rewedged. On the evening before Lauren Jordan was injured, Elex had rewedged the plates at the request of a city public works inspector.

On the morning she was injured, Lauren Jordan entered the crosswalk heading west across Vine Street, a one-way northbound street. As she stepped into the street, she noticed a bus coming up Vine Street. There is a dispute as to whether Lauren Jordan stepped back and waited for the bus to clear or continued to walk towards the rear of the bus. The bus struck the corner of a steel plate, causing it to bounce into the air and land on Lauren Jordan's left foot. The plate had to be pried off her foot. Her injuries required the complete amputation of the great toe and the removal of most of the second toe on Lauren Jordan's left foot.

Appellants Lauren and Robert L. Jordan filed the within complaint on October 27, 1988, seeking damages for personal injuries and loss of consortium. Elex failed to answer and appellants moved for a default judgment. Following a hearing, a referee recommended that a default judgment be entered against Elex in the amount of $2,500,000. The trial court rejected the referee's report in part and granted a default judgment against Elex only on the issue of negligence.

Trial on appellants' claims against Elex and the city commenced December 3, 1990, all other defendants having been previously dismissed. Following the presentation of evidence, the trial court held, and subsequently instructed the jury, that Lauren Jordan was negligent as a matter of law in proceeding into the crosswalk. The jury, in answer to interrogatories, found appellants' total damages to be $101,000. The jury further entered general verdicts for both defendants, assigning the negligence as follows: Lauren Jordan sixty-eight percent, Elex nineteen percent and the city thirteen percent. Appellants' motions for judgment notwithstanding the verdict and for a new trial were overruled by the trial court. Both defendants filed motions to tax certain costs to appellants. The trial court granted Elex $2,276.05 and the city $800.65 in costs. Appellants timely appealed.

Appellants' first assignment of error alleges the trial court erred in overruling their motion for judgment notwithstanding the verdict against Elex. In support of their motion for judgment notwithstanding the verdict, appellants argued that on April 24, 1989, the trial court entered a default judgment against Elex on the issue of liability, and, therefore, the trial court erred in

permitting Elex to assert comparative negligence to limit or negate its liability for damages.

The trial court's entry of April 24, 1989 provides:

"1. The trial court adopts the referee's finding that Elex is in default for failure to answer or otherwise defend. Judgment is hereby granted in favor of plaintiffs and against Elex, Inc. on the issue of liability.

"2. The court does not adopt the referee's findings with respect to the award of damages, and that issue shall be subject to further proceedings.

"3. The motion by Elex, Inc., for leave to file an answer is denied with respect to liability; however, Elex may assert defenses on the issue of plaintiffs' damages."

In its entry denying appellants' motion for judgment notwithstanding the verdict, the trial court interpreted the April 24, 1989 entry as providing that Elex could assert "the defenses of comparative negligence, failure to mitigate, proximate causation and related issues." The court also noted that "all relevant issues were fully and fairly tried to a jury." Further, in ruling on appellants' motion for a directed verdict during trial, the judge stated that the court had not previously decided the issues of foreseeability or proximate cause.

We find no error in the trial court's interpretation of the April 24, 1989 entry. In addition, that interpretation is consistent with the conduct of all parties at trial. Therefore, the first assignment of error is overruled.

Appellants' second assignment of error alleges the trial court erred in instructing the jury that Lauren Jordan was negligent as a matter of law.

At trial, there was testimony that the hazardous nature of the crosswalk area, including the metal plates, was open and obvious. Lauren Jordan testified that she was aware the plates were uneven, made noise, and moved when traffic passed over them. Based upon this evidence, the trial court directed a verdict against appellants on the issue of Lauren Jordan's negligence, holding that she was negligent as a matter of law because she voluntarily stepped into an area which was openly and obviously dangerous.

Appellees argue that the danger was so obvious that Lauren Jordan was negligent as a matter of law in proceeding into the crosswalk. We reject this argument. While the condition of the crosswalk may have been open and obvious, there was some question as to whether Lauren Jordan fully appreciated the danger of the moving metal plates. Appellees knew that the plates moved and bounced when traffic passed over them, yet the city made the decision to keep the crosswalk open, inviting the public to use it. It would certainly be reasonable for a pedestrian to assume that if the crosswalk was

so hazardous that one should not enter it, the crosswalk would have been closed. Under these circumstances, it cannot be said that Lauren Jordan was negligent as a matter of law in entering the crosswalk.

In addition, there is conflicting testimony as to Lauren Jordan's actions prior to the time she was injured. She testified that when she saw the bus approaching, she stopped and stepped back. Other witnesses testified that she was walking towards the rear of the bus when the accident occurred.

Based upon our review of the record, we hold that the issue of Lauren Jordan's negligence was a question of fact for the jury to resolve in light of all the surrounding circumstances. The second assignment of error is sustained.

For their third assignment of error appellants allege:

"The trial court erred to the prejudice of appellants by instructing the jury, over appellants' objection, as to the city crosswalk ordinances."

The evidence concerning whether Lauren Jordan was within the crosswalk at the time of her injury was conflicting. The trial court gave the following instructions to the jury at the city's request:

"No pedestrian shall cross a roadway at a place other than a crosswalk except when crosswalks are at unreasonable distances apart; provided however that no pedestrian shall cross the highway at a place between crosswalks within 150 feet of a marked or signalized crosswalk. [Section] 506.46 of the Cincinnati Municipal Code.

"Crosswalk is defined as any portion of a roadway, at an intersection or elsewhere, distinctly indicated for pedestrian crossing by lines or other markings on the surface. Section 501-1-C3(b) of the Cincinnati Municipal Code.

"If the plaintiff, for her own pleasure and convenience, left the sidewalk on the eastern side of Vine Street, and crossed Vine Street outside of a crosswalk, and outside the ordinary and traveled way for pedestrians; you must consider if engaging in such conduct was the exercise of ordinary care, and if such failure to proceed within the crosswalk proximately caused her injury.

"If the plaintiff could have avoided injury by using the marked crosswalk she was negligent as a matter of law for failure to do so."

The jury instructions defined "crosswalk" as set forth in the Cincinnati Municipal Code and correctly stated that pursuant to municipal ordinance, pedestrians are required to cross the street in a crosswalk. Further, the instructions correctly informed the jury that if they found Lauren Jordan had attempted to cross the street outside the crosswalk, they were entitled to consider (1) whether such action constituted ordinary care; (2) whether that

action was a proximate cause of her injuries; and (3) whether she could have avoided the injury by using the crosswalk. Certainly, the determinations of whether Lauren Jordan had violated the city crosswalk ordinance, in the absence of ordinary care for her own safety, and whether the violation was a proximate cause of her injury were essential to an assessment of the comparative negligence of the parties.

We find no error in the trial court's instructions to the jury. The third assignment of error is overruled.

Appellants' fourth assignment of error alleges the trial court erred in allowing defense counsel to refer to an abortion which Lauren Jordan had undergone approximately six months prior to the accident.

In support of the claim for lost wages, Dr. Bernard W. Albert, a psychologist and "vocational expert," testified on behalf of appellants concerning Lauren Jordan's anxiety and depression following the accident. Dr. Albert testified that Lauren Jordan's scores in objective tests of both anxiety and depression "just about knocked off the top of the scale." He also stated that she was not very successful in handling stress. Dr. Albert stated that in his opinion, Lauren Jordan was unable to work because of her emotional disability as late as April 8, 1988, the day he examined her. Dr. Albert attributed the mental condition which rendered Lauren Jordan unable to work to the accident.

In cross-examination, Dr. Albert was asked whether in evaluating Lauren Jordan's emotional state he had considered certain events which had occurred in Lauren Jordan's life around the time of the accident. These events included her marriage, the purchase of a new home, the move to a new city, the beginning of a new job, the revelation that her father was an alcoholic, the birth of two children in two years and the fact that about six months prior to the accident she had undergone an abortion. Dr. Albert admitted that such "stresses" could be significant in assessing a person's psychological health, but that because he was unaware of them he had not considered them in his evaluation of Lauren Jordan.

After reviewing Dr. Albert's testimony, we find no error in the trial court's allowance of the limited references to Lauren Jordan's abortion as set forth above. Dr. Albert's testimony was presented to show that Lauren Jordan's depression and anxiety were attributable solely to the injuries she suffered in the accident. The abortion question certainly had a bearing on whether appellants' expert witness had knowledge of certain aspects of Lauren Jordan's life which he admitted could have affected her psychological well-being. This was relevant as to the weight to be given to Dr. Albert's testimony in light of the information omitted in his report and also as to whether Lauren

Jordan's psychological condition was attributable solely to the injuries she suffered in the accident. The fourth assignment of error is overruled.

Appellants' fifth and sixth assignments of error allege:

"The trial court erred to the prejudice of appellants by striking relevant testimony of plaintiffs' vocational expert as being 'incompetent[.]'

"The trial court erred to the prejudice of appellants by excluding the testimony of plaintiffs' economics expert as to the value of lost earnings and household services."

In support of their claim for damages, appellants presented the testimony of two expert witnesses, Dr. Bernard Albert and John Davis, an economist. As described in part under the fourth assignment of error, Dr. Albert testified as to Lauren Jordan's future employability and lost wages. He estimated that as a result of her injury she lost wages in the amount of $9,200 to $10,700 per year. His opinion as to the lost wages was based upon the assumption that in the future Lauren Jordan would be limited to sedentary work. On cross-examination, Dr. Albert stated that he put Lauren Jordan into the sedentary category because of her complaints about her foot. Dr. Albert acknowledged that he had no medical evidence that Lauren Jordan would be limited to sedentary work in the future. He also admitted that he was not competent to do a functional evaluation as to Lauren Jordan's physical ability to do other than sedentary work. The trial court struck Dr. Albert's testimony relating to the sedentary-work category, ruling that it was incompetent because there was no medical evidence to support the assumption that Lauren Jordan would be limited to sedentary work.

Appellants also called John Davis, an economist, to testify on their behalf as to the loss of Lauren Jordan's services. Davis was asked to make certain calculations regarding the value of lost household services performed by Lauren Jordan, based upon her own estimate of the percentage of her disability. No medical testimony was offered in support of Davis's opinions about the percentage of Lauren Jordan's disability. In fact, Davis testified, "I'm not a doctor, so I could not say anything about medical ability." The court excluded Davis's testimony about the loss of household services, as well as that regarding future earnings, due to appellants' failure to produce any competent medical testimony as to Lauren Jordan's disability.

In *Roberts v. Mut. Mfg. & Supply Co.* (1984), 16 Ohio App.3d 324, 16 OBR 355, 475 N.E.2d 797, we noted that in awarding prospective damages, juries are confined to those damages reasonably certain to follow from the claimed injury. Generally in the case of an objective injury, such as the loss of a body member, the jury may draw their conclusions as to future pain and

suffering from the fact of the injury alone, the permanency being obvious. *Id.* However, in a case involving a subjective injury, expert medical testimony is needed·to prove future pain and suffering or permanency. *Id.*

In the case *sub judice,* the loss of Lauren Jordan's toes is in one respect an objective injury. Surely it is within the common knowledge and experience of a jury that losing two toes will result in pain and suffering. In another respect, however, the injury is subjective. The subjective portion of the injury relates to the lost household services and future earnings. There is nothing within the common knowledge and experience of jurors to enable them to conclude that because Lauren Jordan lost two toes she is, for example, fifty percent disabled as far as being able to perform household chores. Nor can the jury say whether such an injury will require a worker to engage solely in sedentary work in the future. Without competent medical testimony, the necessary causal relationship between Lauren Jordan's injury and her damages cannot be shown and any award would be speculative. Because appellants failed to present competent medical testimony upon which to base the opinions of their experts, the trial court did not err in excluding the testimony. The fifth and sixth assignments of error are overruled.

For their seventh assignment of error appellants allege the trial court erred in instructing the jury that no damages for loss of earnings could be awarded for any period after April 8, 1988.

Appellants attempted to recover lost wages for Lauren Jordan from the date she was injured until she returned to work approximately one month prior to trial. The medical evidence presented indicated only that Lauren Jordan was physically unable to work from March 3, 1987, the date of the injury, until May 15, 1987, when her treating orthopedic physician, Dr. Thomas Kiefhaber, released her to return to work without restriction. The trial court allowed the jury to consider Lauren Jordan's lost wages up to the date of April 8, 1988, the day she was examined by Dr. Albert. Dr. Albert testified that in his opinion on April 8, 1988, Lauren Jordan was emotionally unable to return to work. There is no competent evidence that she was unable to work beyond that date. There is no testimony as to when Lauren Jordan was able to return to work. We hold the trial court did not err in limiting the jury to consideration of damages to the period ending April 8, 1988, the last date of any competent testimony as to Lauren Jordan's ability to return to work. The seventh assignment of error is overruled.

Appellants' eighth assignment of error alleges the trial court erred in admitting into evidence "the income tax returns and yearly earnings of plaintiff·Robert Jordan."

The trial court admitted into evidence Lauren and Robert Jordan's joint income tax returns for the years 1986, 1987 and 1988. Under the circumstances of this case, we find no error prejudicial to appellants in the admission of the income tax returns.

■■■■■ Initially, we note that the returns were relevant to Lauren Jordan's ,claim for loss of income. See *Drone v. Warren Tribune Chronicle* (Jan. 8, 1979), Trumbull App. No. 2581, unreported. In addition, Lauren Jordan testified that she did not purchase a prosthetic insert, a type of orthotic device recommended by her doctors to correct walking difficulties, because at $100 it was "too expensive." She stated that $100 was "a lot of money" to her in 1987. When cross-examined as to the cost of the prosthetic insert in relation to the family income, she testified that the $100 cost was too expensive because of the expenses incurred in the family's move to California in 1987. Lauren Jordan denied that her husband had received a substantial increase in salary upon the move to California. She stated that her husband had not really received a large salary increase when the moving expenses involved were deducted. When questioned regarding the moving expenses, Lauren Jordan stated, "You would have to look through our tax return to figure out exactly what our moving expenses are." The income tax returns were admissible to impeach Lauren Jordan's testimony as to why she did not follow her doctor's advice and purchase the prosthetic insert. See *Dadiskos v. Shorey* (C.A.2, 1956), 229 F.2d 163; *Cummins v. Milford* (June 29, 1983), Clermont App. No. 1142, unreported. Under these circumstances, we cannot say the trial court clearly abused its discretion in admitting the income tax returns. See *Le Sueur Creamery, Inc. v. Haskon, Inc.* (C.A.8, 1981), 660 F.2d 342, certiorari denied (1982), 455 U.S. 1019, 102 S.Ct. 1716, 72 L.Ed.2d 138. The eighth assignment of error is overruled.

The ninth assignment of error, which alleges that the jury's verdict was against the manifest weight of the evidence, is sustained solely for the reasons set forth under the second assignment of error.

For their tenth assignment of error, appellants allege:

"The trial court erred to the prejudice of appellants by assessing costs against plaintiffs for court reporting fees, expert witness fees, and travel expenses."

Appellants argue that the trial court erred in awarding appellees the following as costs:

"(1) $165 paid by Elex to appellants' expert, Dr. Albert, for a transcription of his handwritten office notes used during the deposition;

"(2) $664.20 paid by Elex for air fare and automobile rental for Lauren Jordan, which represent the expense of bringing her from California to Cincinnati for an independent medical examination; and

"(3) deposition costs paid by appellees for (1) stenographic copies of the videotape depositions of three of appellants' witnesses taken for use at trial, (2) depositions taken by appellees of Lauren Jordan, Robert Jordan, and John Davis, appellants' economic expert, and (3) copies of discovery depositions taken by appellants of three Elex employees."

Civ.R. 54(D) provides:

"Costs. Except when express provision therefore is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."

Pursuant to Civ.R. 54(D), in the absence of a specific statutory provision for the assessment of a particular cost, the trial court is required to exercise its discretion in awarding a prevailing party the costs of litigation. *Baby Tenda v. Jessup* (Mar. 16, 1988), Hamilton App. Nos. C–870158 and C–870397, unreported, 1988 WL 32092; see *Jones v. Pierson* (1981), 2 Ohio App.3d 447, 2 OBR 542, 442 N.E.2d 791. In ruling on a motion to tax a nonstatutory expense as a cost under Civ.R. 54(D), the trial court must determine (1) whether the expense is a litigation expense or a personal expense and (2) whether the litigation expense should be awarded as a cost. *Id.* Litigation expenses are those expenses incurred by the prevailing party which are necessary and vital to the litigation. *Id.* Upon determining· that the expense constitutes a litigation expense, the court must allow the expense as a cost to the prevailing party unless the expense is unusual in type or amount. *Id.*

In applying the *Baby Tenda* analysis, the trial court found that the items awarded as costs were necessary and vital litigation expenses. Following a complete review of the record, we hold the trial court did not err in finding that the costs requested were reasonable, necessary, and vital to the litigation. Furthermore, there is no showing that it would be inequitable, in light of any conduct on appellees' part, to award the expenses as costs.

We point out that the $165 fee paid to Dr. Albert does not, as appellants argue, constitute an expert-witness fee. It is merely a portion of the deposition fee. We also note that depositions used for cross-examination at trial may be taxable litigating expenses if they are, in the trial court's discretion, determined to be vital to the case. *Vinci v. Ceraolo* (1992), 79 Ohio App.3d 640, 607 N.E.2d 1079.

Even though we have held that the trial court did not abuse its discretion in assessing the particular costs against appellants, we must sustain appellants' tenth assignment of error solely for the reason that we have determined that the judgment upon which the award of costs was based must be reversed. Because we have reversed the underlying judgment, there is nothing upon which an award of costs may be predicated. The tenth assignment of error is sustained.

We now turn to appellee city's cross-assignment of error, which alleges that the trial court erred in failing to grant the city's motion for a directed verdict.

The city argues that the trial court erred in overruling its motion for directed verdict because appellants failed to set forth a specific monetary damage amount in their complaint against the city. We disagree.

R.C. 2744.04(B) provides in pertinent part:

"In the complaint filed in a civil action against a political subdivision * * * the complainant shall include a demand for a judgment for the damages that the judge in a nonjury trial or the jury in a jury trial finds that the complainant is entitled to be awarded, but shall not specify in that demand any monetary amount for damages sought."

Clearly, R.C. 2744.04(B) provides that the jury should determine damages in a jury trial. *Hubner v. Sigall* (1988), 47 Ohio App.3d 15, 546 N.E.2d 1337. Appellants in the case *sub judice* failed to specify specific monetary damages in accordance with R.C. 2744.04(B).

The city also argues that the trial court erred in overruling its motion for directed verdict because appellants failed to present any evidence of negligence on the part of the city. After reviewing the record and construing the evidence most strongly in favor of appellants, we cannot say that reasonable minds could come to but one conclusion on the evidence submitted, that conclusion being adverse to appellants. See *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467; *Humphrey v. Dent* (1980), 62 Ohio St.2d 273, 16 O.O.3d 321, 405 N.E.2d 284. The cross-assignment of error is overruled.

The judgment of the trial court is reversed and the cause is remanded for a new trial and for further proceedings consistent with law and this decision.

*Judgment reversed*
*and cause remanded.*

GORMAN, P.J., SHANNON and DOAN, JJ., concur.