[Cite as *Marzullo v. J.D. Pavement Maintenance*, 2011-Ohio-6261.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   96221

## RUTHIE MARZULLO, ET AL.

PLAINTIFFS-APPELLEES/
CROSS-APPELLANTS

vs.

## J.D. PAVEMENT MAINTENANCE
## D.B.A. UNITED PAVING

DEFENDANT-APPELLANT/
CROSS-APPELLEE

**JUDGMENT:**
**AFFIRMED IN PART,**
**REVERSED IN PART AND REMANDED**

Civil Appeal from the

Cuyahoga County Court of Common Pleas
Case No.   CV-695025

**BEFORE:**   Keough, J., Kilbane, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:**   December 8, 2011

**ATTORNEY FOR APPELLANT/CROSS-APPELLEE**

John F. Gannon
55 Public Square
Suite 930
Cleveland, OH 44113

**ATTORNEYS FOR APPELLEES/CROSS-APPELLANTS**

Todd Petersen
Susan E. Petersen
Petersen & Petersen
428 South Street
Chardon, OH 44024

KATHLEEN ANN KEOUGH, J.:

{¶ 1}   Defendant-appellant/cross-appellee, J.D. Pavement Maintenance d.b.a. United Paving ("appellant"), appeals the common pleas court's

judgment rendered after a jury verdict in favor of plaintiffs-appellees/cross-appellants, Ruthie and Frank Marzullo (the "Marzullos"). The Marzullos also appeal the jury's verdict. For the following reasons, we affirm in part, reverse in part, and remand for a hearing on the issue of future economic damages.

{¶ 2} In 2007, the Marzullos filed a lawsuit alleging that appellant improperly applied seal coating on the parking lot of Ruthie's employer causing her to fall on October 24, 2005. After extensive and exhaustive discovery, the case was tried before a jury in November 2010. The jury returned a general verdict of $300,000 in favor of the Marzullos and answered interrogatories apportioning $120,000 for past damages, $180,000 for future economic damages, $0 for future non-economic damages, and $0 for Frank's loss of consortium claim.

{¶ 3} Both parties appeal the jury's verdict; appellant challenges the $180,000 award for future economic damages and the Marzullos challenge the zero verdicts for future non-economic damages and loss of consortium.

### APPELLANT'S APPEAL

{¶ 4} In its appeal, appellant raises three assignments of error in which it argues that the trial court abused its discretion regarding the testimony of two of the Marzullos' experts, thus affecting their substantive rights, and that the award of future economic damages was based on speculation.

## I. Economist Testimony

**{¶ 5}** Appellant argues in its first assignment of error that the trial court committed prejudicial error in permitting Dr. John Burke, the Marzullos' economist expert, to testify regarding future loss of earnings and the value of in-kind services when such testimony was not based upon facts perceived by him or facts admitted into evidence during trial, thus violating Evid.R. 703.

**{¶ 6}** It is within the discretion of the trial court to determine the admissibility of opinion testimony of experts. Evid.R. 104(A); *Valentine v. Conrad*, 110 Ohio St.3d 42, 2006-Ohio-3561, 850 N.E.2d 683, ¶9. Absent a finding of an abuse of such discretion, i.e., that the trial court's decision was unreasonable, arbitrary, or unconscionable, a reviewing court may not disturb a trial court's determination as to the admissibility of expert opinion testimony. See *Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 165, 529 N.E.2d 1382. Further, a trial court's discretion in admitting expert opinion testimony concerning future damages requires that the court "keep such extrapolations within reasonable bounds and insure that they conform to the evidence." *Guhn v. Bd. of Edn., Clyde-Green Springs School Dist.* (Sept. 20, 1991), Sandusky App. No. S-90-5, quoting *Bach v. Penn Cent. Transp. Co.* (1974), 502 F.2d 1117, 1122; see, also, *Drayton v. Jiffee Chem. Corp.* (1978), 591 F.2d 352, 362.

**{¶ 7}** Expert testimony is admissible if it will assist the trier of fact to understand the evidence or determine an issue of fact. Evid.R. 702; *Lee v. Baldwin* (1987), 35 Ohio App.3d 47, 49, 519 N.E.2d 662. The facts or data upon which an expert bases an opinion may be those perceived by the expert or admitted into evidence at the hearing. Evid.R. 703; *State v. Solomon* (1991), 59 Ohio St.3d 124, 126, 570 N.E.2d 1118. Moreover, the Ohio Supreme Court has held that the hypothesis upon which an expert witness is asked to state his opinion must be based upon facts within the personal knowledge of the witness or upon facts shown by other evidence. *Burens v. Indus. Comm.* (1955), 162 Ohio St. 549, 124 N.E.2d 724; *Kraner v. Coastal Tank Lines* (1971), 26 Ohio St.2d 59, 269 N.E.2d 43. Expert opinion testimony based upon hypothetical situations not introduced into evidence may be properly excluded. *State v. Schell* (1984), 13 Ohio App.3d 313, 318, 469 N.E.2d 999.

**{¶ 8}** In this case, appellant contends that Dr. Burke's expert opinion and report was based solely upon the assumed fact that Ruthie was disabled and unable to work, which was neither a fact testified to, evidenced at trial, or within his personal knowledge. Appellant objected in its motion in limine and prior to Dr. Burke testifying at trial, arguing that Dr. Burke's opinion as to future economic loss, i.e. loss of wages and in-kind services, lacked foundation because whether Ruthie was able to work or disabled was outside

the expertise of Dr. Burke.  Appellant argues further that Ruthie's medical experts did not testify at deposition or at trial that her alleged injuries prevented her from working, performing daily household activities, or that she was disabled.

{¶ 9}  At trial, Dr. Burke admitted (1) he is not a medical doctor; thus, he formed no opinion as to whether Ruthie is disabled; (2) his expert report and opinion were based on the assumption that Ruthie was disabled and would remain unemployed for the duration of her life expectancy; and (3) he did not review any of Ruthie's medical records in forming his opinion and report.

{¶ 10} In overruling appellant's motion and objection, the trial court stated that:

{¶ 11} "I am going to allow Dr. Burke to testify.  I think both, Mr. Gannon, your objections are noted for the record, as it relates to Dr. Burke's conclusion concerning Mrs. Marzullo's potential employment, his own analyses that he's created, and certainly we're going to hear about it.

{¶ 12} "Nonetheless, these really are questions of fact to be decided by the Jury.  And I think that there is enough evidence that suggests that Mrs. Marzullo perhaps will not be employed in the future, because of her alleged injuries at this time.

{¶ 13} "So, at this point, I think that's a question for the Jury to make a determination on. So, I'm going to allow Dr. Burke to testify to aid them in making that conclusion. If that's what they so choose to make."

{¶ 14} When the trial court made its ruling, the jury had heard only laywitness testimony from Ruthie and her co-workers and expert testimony from Ruthie's psychologist, Dr. Shapiro, concerning the impact of Ruthie's alleged physical injuries on her mental health. The trial court based its ruling on the presumption that the jury should determine whether Ruthie would be able to be employed in the future due to her alleged injuries.

{¶ 15} Ruthie argues on appeal that competent and credible medical evidence was presented because her physicians testified that she would need further treatment and possibly a hip replacement. Dr. Wael Barsoum testified that Ruthie had two options regarding future medical treatment: (1) joint preservation or (2) total hip replacement. However, that was the extent of Dr. Barsoum's testimony regarding future treatment. He did not testify that these future procedures or any recuperation period would prevent Ruthie from working or performing daily household activities. Ruthie contends that a jury "can infer from common knowledge that a period of recuperation and disability will be necessary after [a] surgical procedure." This argument is contrary to law.

{¶ 16} Rather, we find that the trial court's decision allowing Dr. Burke's testimony was unreasonable because it left the jury to make an expert conclusion regarding whether Ruthie's condition impaired her ability to work. See *Ratliff v. Colasurd* (Apr. 27, 1999), Franklin App. No. 98AP-504 (plaintiff's testimony alone was insufficient to demonstrate the extent of his inability to work); *Williams v. Noden* (Feb. 15, 1995), Summit App. No. 16857 (common knowledge and experience does not dictate if, when, and to what extent a subjective injury will diminish a person's ability to work in the future; "when a physician cannot reach a conclusion without the aid of scientific tests, a jury certainly cannot do the same without an expert."). Typically, it is the duty of the jury to assess the credibility and evaluate facts upon which the expert based his opinion. See *McKay Machine Co. v. Rodman* (1967), 11 Ohio St.2d 77, 82, 228 N.E.2d 304. However, in this case, Dr. Burke did not base his opinion on any facts testified to, admitted into evidence, or perceived, but only on an assumption.

{¶ 17} "An award of future damages for future wage loss raises two independent evidentiary concerns: (1) whether a plaintiff offered sufficient proof of future impairment; and (2) whether a plaintiff offered sufficient evidence of the extent of prospective damages flowing from the impairment." *Power v. Kirkpatrick* (July 20, 2000), Franklin App. No. 99AP-1026. To recover future earnings, a plaintiff must prove by sufficient evidence that she

is reasonably certain to incur such damages in the future. Id., citing *Galayda v. Lake Hosp. Sys., Inc.* (1994), 71 Ohio St.3d 421, 644 N.E.2d 298. "Therefore, the showing of future loss of earnings in a personal injury case involves demonstrating with reasonable certainty that an individual's injury or condition prevents that individual from attaining his or her pre-injury wage." *Power*, supra. The general rule is that impairment of earning capacity may only be considered as an element of damages where there is evidence of the extent of such loss. *Hanna v. Stoll* (1925), 112 Ohio St. 344, 354, 147 N.E. 339.

{¶ 18} In this case, neither of Ruthie's medical experts or her psychological expert testified with any reasonable degree of certainty that Ruthie's injury prevented her from obtaining her pre-injury wage or from performing daily activities.

{¶ 19} In *Jordan v. Elex, Inc.* (1992), 82 Ohio App.3d 222, 611 N.E.2d 852, the First District upheld the trial court's exclusion of testimony from two of the plaintiff's experts, one an economist. The court held that the trial court properly excluded the economist's testimony regarding loss of household services and future earnings because the plaintiff failed to produce any competent medical testimony supporting the economist's opinions. Id. at 230-231.

{¶ 20} In *Jordan*, the plaintiff lost two of her toes. The court held that although the injury was objective for purposes of construing pain and suffering damages, the injury was subjective as it related to future earnings and lost household services. "There is nothing within the common knowledge and experience of jurors to enable them to conclude that because [the plaintiff] lost two toes she is, for example, fifty percent disabled as far as being able to perform household chores. Nor can the jury say whether such an injury will require a worker to engage solely in sedentary work in the future. Without competent medical testimony, the necessary causal relationship between [plaintiff's] injury and her damages cannot be shown and any award would be speculative." Id. at 231.

{¶ 21} Much like in *Jordan*, Dr. Burke's testimony was not based on any medical testimony supporting his assumption that Ruthie's injuries rendered her disabled or that she would be unemployed for the duration of her life expectancy and thereby prevented her from attaining her pre-injury wage. No medical testimony was offered to support Dr. Burke's expert report and conclusions. There is nothing within the common knowledge and experience of the jurors to enable them to conclude that because Ruthie suffered injury to her hip, the injury would prevent her from attaining her pre-injury wage.

{¶ 22} Accordingly, we find that the trial court abused its discretion in allowing Dr. Burke to testify regarding future loss of earnings and in-kind

services because his expert report and opinion was not based on competent and credible medical testimony, but rather on an assumption. Appellant's first assignment of error is sustained.

## II. Award of Future Economic Damages

{¶ 23} In its second assignment of error, appellant contends that trial court erred in submitting the issue of future economic damages to the jury. Appellant raises two issues relating to this assignment of error.

{¶ 24} In its first issue, appellant claims that the trial court erred in submitting the issue of future economic damages to the jury when no expert testimony was presented to provide a foundation for future loss of earnings, loss of in-kind services, or future damages of any kind. The majority of appellant's argument is that Dr. Burke's testimony was in error and without that testimony, no evidence existed supporting the trial court's decision to submit the issue of future economic damages to the jury.

{¶ 25} The jury's verdict form and interrogatories for "future economic damages" included lost wages, salaries, or other compensation, and also included "all expenditures for medical care or treatment, rehabilitation services, or other care, treatment, services, products or accommodations" or "any other expenditures incurred" as a result of Ruthie's claim. Therefore, the jury could award "future economic damages" based on one or all three categories provided.

{¶ 26} Accordingly, even without Dr. Burke's testimony, the trial court did not abuse its discretion in submitting the issue of future economic damages to the jury because the verdict form did not require the jury to delineate, apportion, or indicate to which category of "future economic damages" the award would be in reference.

{¶ 27} Contrary to appellant's statement that the award of future damages could not have been for future medical expenses because no physician testified as to future medical expense, we find that Ruthie's treating psychologist, Dr. Shapiro, testified as to further treatment. The jury heard evidence from Dr. Shapiro that Ruthie would be under his care for a minium of one to two more years, if she was physically better and employed. Dr. Shapiro testified that he sees Ruthie weekly at $125 per session. Accordingly, some competent and credible evidence of further medical expenses were presented; therefore, the trial court did not abuse its discretion in submitting the issue of future economic damages to the jury.

{¶ 28} Appellant raises as its second issue that the jury award of $180,000 for future economic damages was based on speculation. We agree.

{¶ 29} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E.*

*Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus.

**{¶ 30}** In order to recover future damages, a plaintiff must prove by sufficient evidence that she is reasonably certain to incur such damages in the future. *Power*, citing *Galayda v. Lake Hosp. Sys., Inc.* (1994), 71 Ohio St.3d 421, 425, 644 N.E.2d 298.

**{¶ 31}** A jury is not permitted to speculate as to damages for future medical expenses. In *Powell v. Montgomery* (1971), 27 Ohio App.2d 112, 272 N.E.2d 906, the Fourth District recognized: "'The mere fact alone that there may be some permanency to the injury is not enough. This court is committed to the proposition that the jury cannot be allowed to speculate or guess in making allowance for future medical expenses; there must be some data furnished the jury upon which it might reasonably estimate the amount to be allowed for this item. Of course, at best it is a mere estimate and cannot be determined with accuracy, but there must be some evidence to authorize the estimate. The jury cannot be left to guess the probable nature of future treatment or the probable expense thereof.'" Id. at 120-121 (internal citations omitted), adopting and quoting *Henderson v. Breesman*, 77 Ariz. 256, 259, 269 P.2d 1059.

**{¶ 32}** "The members of this court cannot determine from the evidence without speculation, and neither could the jury, whether plaintiff's injury

would require medical or hospital treatment in the future, and, if so, at what cost, nor can it be determined from the evidence whether plaintiff will continue to suffer pain, as he has from the date of the accident to trial, in the future and, if so, for what period of time it will continue." *Powell* at 121.

{¶ 33} Thus, in awarding prospective damages, juries are confined to those damages reasonably certain to follow from the claimed injury. In *Tully v. Mahoning Express Co.* (1954), 161 Ohio St. 457, 119 N.E.2d 831, the Ohio Supreme Court held that evidence as to the extent of further medical treatment, future hospitalization, and estimated expenses, and the estimated time of a plaintiff's future unemployment as a result of such treatment and hospitalization can only be given by an expert witness. This rule was later expanded by the Ohio Supreme Court in *Day v. Gulley* (1963), 175 Ohio St. 83, 191 N.E.2d 737, wherein the Court held that expert evidence as to future pain and suffering, permanency of injuries, or lasting impairment of health is required where the injury is subjective in character.

{¶ 34} An injury is subjective when the injury alone is insufficient to allow the jury to conclude with reasonable certainty that a plaintiff will suffer future damages. See, e.g., *Day*. Accordingly, expert testimony on the extent of a plaintiff's subjective injury is necessary for an award of prospective damages. *Day* at 86, and *Powell* at 119. If the injury is an objective injury, i.e., loss of an arm or leg, the injury itself provides the "evidentiary basis for

the jury to conclude with reasonable certainty that future damages, such as medical expenses will probably result." *Powell* at 119.

{¶ 35} We find the alleged conditions, i.e. hip injury, piriformis syndrome, torn labrum, watershed lesion, and psychological conditions suffered by Ruthie are subjective in nature; therefore, she was required to present expert testimony that she would suffer future damages. *Power*, supra citing *Williams*, supra (holding that the jury could not conclude, based on common knowledge and experience, that a herniated disc would cause the disability and prospective damages claimed by the plaintiff; therefore, the plaintiff was required to submit expert testimony evidencing such disability and prospective claims).

{¶ 36} Ruthie argues that the testimony from her, her husband, coworkers, and medical experts showed that she "suffered significant pain as a result of her hip injury, and common sense that hip replacement surgery would necessitate a period of rehabilitation and recuperation was sufficient to allow the jury to infer that [she] would incur lost wages in the future."

{¶ 37} In support of her argument, Ruthie cites *Union v. Clevenger* (July 7, 1988), Cuyahoga App. No. 54030. In *Union*, one of the plaintiff's physicians testified regarding the extent and permanency of plaintiff's injuries, future medical procedures, and their associated costs, and that during the period of recuperation she would be disabled. This court found

that this testimony was "competent credible evidence of the [plaintiff's] future damages reasonably certain to follow the injury complained of by the [plaintiff]."

{¶ 38} However, and unlike the testimony in *Union*, none of Ruthie's medical experts except Dr. Shapiro testified regarding the permanency of her injuries, the costs associated with any future medical procedures Ruthie may undergo, or whether during the period of recuperation she would be disabled. No evidence was elicited or given to validate or even hint at the costs associated with any future medical procedures or treatment; thus any amount apportioned or determined by the jury would be based purely on conjecture or speculation, which is contrary to law.

{¶ 39} Moreover, even construing the evidence in favor of Ruthie, we cannot say that the $180,000 jury verdict was based on competent and credible evidence. Having previously found that the trial court abused its discretion in allowing Dr. Burke to testify regarding future earnings and in-kind services, the only competent evidence the jury had before it was limited testimony that Dr. Shapiro treats Ruthie for psychological issues once a week at approximately $125 a visit. When questioned as to how long he would have to see Ruthie, his answer was also based on speculation of one to two years if she was medically better and employed, but longer if not. Considering this testimony alone, we cannot say that competent and credible

evidence was presented to support the jury verdict for future economic damages of $180,000, when each visit to Dr. Shapiro is only $125. Accordingly, the jury's award of $180,000 was based on speculation.

{¶ 40} "As a general rule, once a plaintiff establishes a right to damages, that right will not be denied because damages cannot be calculated with mathematical certainty. * * * However, damages will not be awarded based on mere speculation and conjecture.* * * The plaintiff must show entitlement to damages in an amount ascertainable with reasonable certainty. * * * In assessing prospective damages, the trier of fact can only consider damages which are reasonably certain to follow the injury complained of." (Citations omitted.) *Barker v. Sundberg* (Oct. 25, 1993), Ashtabula App. No. 92-A-1756. Without expert testimony on the future course of medical treatment, a jury is not permitted to simply infer from the expense of past treatment an amount of damages for future treatment. *Scott v. Condo*, Hamilton App. No. C-010123, 2002-Ohio-2148. Restricting jury considerations as to future damages to that which the evidence discloses are reasonably certain to result is to prevent conjecture and speculative with respect to such items. *Powell* at 116.

{¶ 41} While we do not discount Ruthie's injury, the evidence in the record before us does not support a jury verdict of $180,000 for future economic damages. However, because some competent and credible evidence

existed allowing the jury to consider the issue of future economic damages, it was not error to submit the issue to the jury. Accordingly, we remand the matter to the trial court to conduct a hearing on future economic damages.

{¶ 42} Appellant's second assignment of error is overruled in part and sustained in part.

### III. Expert Report Disclosure

{¶ 43} In its final assignment of error, appellant contends that the trial court committed prejudicial error in permitting Dr. Shapiro to testify to opinions not disclosed in his report in violation of Civ.R. 26(B)(5)(b) and Loc.R. 21.1 of the Court of Common Pleas of Cuyahoga County, General Division.

{¶ 44} Appellant asserts that Dr. Shapiro's testimony should have been limited to opinions contained in his report dated December 11, 2009. Instead, the trial court allowed Dr. Shapiro to testify regarding treatment he provided to Ruthie from May 2010 until October 2010.

{¶ 45} As discussed above, the introduction of evidence at trial falls within the sound discretion of the trial court. Generally, expert opinions must be disclosed in an expert report prior to trial and elicited from the expert at trial. Loc.R. 21.1. This is to prevent surprise at trial and to give the opposing party an opportunity to properly cross-examine the expert. Loc.R. 21.1 provides for the exchange of expert reports prior to trial, and Civ.R. 26(E)

imposes a continuing duty to update those reports should the expected scope or opinion of the expert testimony change. *Vaught v. Cleveland Clinic Found.*, 98 Ohio St.3d 485, 2003-Ohio-2181, 787 N.E.2d 631, ¶14-21.

{¶ 46} The record before this court shows that Dr. Shapiro's expert report was properly exchanged between the parties prior to trial. This fact is not disputed. However, we also find that the Marzullos properly complied with their duty to update the report under Civ.R. 26(E). The updates appear to be additional medical records regarding treatment that occurred between the time of the initial exchange of reports and the date of trial. Appellant has failed to demonstrate how the supplemental medical records prejudiced its case, when it appears that Dr. Shapiro at all times was going to testify regarding the psychological injuries Ruthie allegedly sustained as a result of the fall.

{¶ 47} Accordingly, we find that the trial court's decision to allow Dr. Shapiro to testify regarding those updated reports was not an abuse of discretion.

{¶ 48} Accordingly, appellant's third assignment of error is overruled.

MARZULLOS' CROSS-APPEAL

I. Future Non-economic Damages

{¶ 49} The Marzullos contend in their first assignment of error that the jury's failure to award future damages for pain and suffering is contrary to

law and against the manifest weight of the evidence. Specifically, they argue that pain and suffering are presumed in the law and do not need to be specifically plead or proven to be recoverable; and therefore, because they proved that Ruthie's injury was caused by appellant's negligence, the jury's failure to award pain and suffering damages was contrary to law.

{¶ 50} "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris*, supra.

{¶ 51} The Marzullos direct this court to consider the testimony of Ruthie's treating physicians, who testified that additional surgery and rehabilitation is needed in an effort to reduce or eliminate her pain. The Marzullos argue that "in either event, whether she chooses to have surgery and a period of recuperation or whether Ruthie does nothing, she will inevitably endure pain and suffering as a result."

{¶ 52} The Marzullos cite *Hughes v. Koop* (Feb. 18, 1997), Clermont App. No. CA96-10-081, and *Ortman v. Lumbert* (Apr. 14, 1997), Madison App. No. CA96-06-023, for the proposition that a new trial should be ordered where a jury fails to award any damages for a plaintiff's uncontroverted pain and suffering. However, in both cases cited, the jury did not award any damages for pain and suffering, past or future, when the evidence showed that

substantial injury was sustained. In this case, the jury awarded the Marzullos past damages, which included damages for past pain and suffering. Accordingly, the Marzullos' reliance on *Hughes* and *Ortman* are misplaced.

**{¶ 53}** The Ohio Supreme Court in *Day* held that just as expert medical testimony is necessary to sustain a verdict for future medical expense and future loss of wages when the injury is subjective, the same expert testimony rule applies with regard to the permanency of an injury and the assessment of damages for pain, suffering, and disability as a result of such permanency of the injury. *Day* at 87, citing *Brush v. E. Motor Dispatch, Inc.* (App.1950), 61 Ohio Law Abs. 219, 104 N.E.2d 700; see, also, *McCoy v. Gilbert*, 110 Ohio App. 453, 169 N.E.2d 624. Therefore in a case involving a subjective injury, expert medical testimony is needed to prove future pain and suffering or permanency. *Roberts v. Mut. Mfg. & Supply Co.* (1984), 16 Ohio App.3d 324, 475 N.E.2d 797. The probability of future pain and suffering must be demonstrated by expert testimony when the nature of the injury is not obvious. *Corwin v. St. Anthony Med. Ctr.* (1992), 80 Ohio App.3d 836, 841, 610 N.E.2d 1155, citing *Hollobaugh v. D & V Trucking*, Mahoning App. No. 99 CA 303, 2001-Ohio-3265.

**{¶ 54}** Accordingly, an award for future damages for pain and suffering must be supported by expert testimony and evidence. In this case, although there was some testimony that Ruthie was still in pain due to the fall and

would remain in pain until some additional medical procedures were performed, no evidence was presented as to the severity or duration of any of the alleged future pain. Moreover, the jury also heard testimony from competing medical experts regarding Ruthie's injuries and the alleged need for further treatment and could choose to believe or disbelieve some or all of this testimony. In fact, Dr. Kim Stearns, appellant's expert, testified that the injuries Ruthie suffered as a result of the fall in 2005 have healed.

{¶ 55} It is well established that when there is a conflict in the testimony on any subject, the question is one for the trier of fact. *Ayers v. Ishler*, Delaware App. No. 11 CAE 01 0001, 2011-Ohio-4272, ¶60, citing *Barnett v. Hills* (1947), 79 N.E.2d 691, 50 Ohio Law Abs. 208. As the trier of fact, the jury was free to accept or reject any or all of appellant's evidence relating to damages. Id., citing *Peck v. Ryan* (June 30, 1988), Butler App. No. CA87-09-120. Morever, even assuming that the Marzullos presented undisputed evidence, the jury had the inherent power to reject the evidence presented. Id., citing *Lanham v. Wilson* (Aug. 12, 1991), Madison App. No. CA90-11-024. A jury is free to reject any evidence and is not required to accept evidence simply because it is uncontroverted, unimpeached, or unchallenged. Id., citing *Ace Steel Baling, Inc. v. Porterfield* (1969), 19 Ohio St.2d 137, 138, 249 N.E.2d 892.

**{¶ 56}** Finally, there was testimony upon which the jury could have inferred that some of the injuries complained of were either caused by a subsequent fall or were pre-existing. The jury heard testimony that Ruthie continued to work in her same capacity for approximately four years after her fall in 2005; thus, the jury could have determined that the pain and suffering was not as extensive as Ruthie claimed.

**{¶ 57}** Accordingly, we find there was some competent and credible evidence supporting the jury's verdict for non-economic damages. The Marzullos' first assignment of error is overruled.

## II. Loss of Consortium

**{¶ 58}** In their second assignment of error, the Marzullos contend that the jury's failure to award damages to Frank Marzullo for loss of consortium is contrary to law and against the manifest weight of the evidence.

**{¶ 59}** In order to prove a loss of consortium claim, the plaintiffs first must establish the underlying action. Although a separate cause of action, a consortium claim is a derivative claim in the sense that it can only be maintained if the primary negligence action is proven. *Bowen v. Kil-Kare, Inc.* (1992), 63 Ohio St.3d 84, 92-93, 585 N.E.2d 384. Once that is shown, the complaining spouse must show damages proximately caused by the negligent act, much as the primary plaintiff must prove damages. Id. "'Loss of spousal consortium is generally defined as a deprivation of society, services,

sexual relations, and conjugal affection, which includes companionship, comfort, love and solace.'" Id. at 92, quoting *Clouston v. Remlinger Oldsmobile Cadillac, Inc.* (1970), 22 Ohio St.2d 65, 72, 258 N.E.2d 230.

**{¶ 60}** As previously addressed in the Marzullos' first assignment of error, the jury in this case was free to believe all or none of the Marzullos' evidence on this claim, even if uncontroverted. See *Ayers*, supra. Frank and Ruthie both testified that her injuries prevented her from doing daily activities. However, the jury heard evidence from competing medical experts regarding the nature of Ruthie's injuries, and Dr. Stearns opined that the injuries she sustained as a result of her fall in October 2005 did not render her disabled.

**{¶ 61}** Accordingly, we find there was some competent and credible evidence supporting the jury's verdict regarding loss of consortium. The Marzullos' second assignment of error is overruled.

**{¶ 62}** Judgment affirmed in part, reversed in part, and case remanded for a damages hearing on the issue of future economic damages.

It is ordered that parties share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, JUDGE

MARY EILEEN KILBANE, A.J., and
LARRY A. JONES, J., CONCUR