DECISION AND JUDGMENT
{¶ 1} Appellant, John P. Couture, representing the estate of Paul M. Couture in this medical malpractice and wrongful death action, appeals the judgment of the Lucas County Court of Common Pleas. A jury found appellants, William C. Sternfeld, M.D., and the Toledo Clinic, Inc., liable for negligence and wrongful death in reversing an ileostomy. *Page 2 
 {¶ 2} Although the jury awarded damages of $285,252.49 for medical expenses and $5,009.98 in funeral expenses, it awarded no damages for Paul Couture's pain and suffering, and no damages for his children's loss of companionship.
 {¶ 3} Couture filed a motion for additur, or alternatively, a motion for a new trial on the issue of damages only. Dr. Sternfeld and the Toledo Clinic opposed both motions, but argued alternatively that any new trial ordered should include both liability and damages.
 {¶ 4} The trial court denied Couture's motion for additur, on grounds that appellees did not consent to any increase of damages. It denied Couture's motion for a new trial, finding no "passion, prejudice or misconception on the part of the jury."
 {¶ 5} Couture assigns the following error for review:
 {¶ 6} "The trial court abused its discretion when it denied appellant's motion for a new trial on the issues of damages for pain and suffering and wrongful death."
 I. Relevant Facts {¶ 7} Paul Couture had an ileostomy in 1999, due to a blockage between his stigmoid colon and rectum. He had already had a previous colon resection and partial removal. The 1999 surgery removed another portion of colon and created a colostomy. Ten days after the 1999 surgery, the incision began leaking bowel contents. Another surgery found a fistula, or leak, a few centimeters from the colostomy, and the remainder of the colon was removed. At that point, an ileostomy was performed. The ileostomy pulled the terminal end of the small intestine through the skin so that waste could exit *Page 3 
through the opening into a plastic bag. Dr. Bais, Dr. Sternfeld's partner, performed these surgeries.
 {¶ 8} A few days after the ileostomy, another leak occurred. Dr. Sternfeld performed emergency surgery to remove a possible infection site and repair the leak. From this surgery, Paul Couture sustained an incisional wound which took much longer than normal to heal.
 {¶ 9} In early May 2001, Paul Couture sought Dr. Sternfeld's opinion on reversing the ileostomy. At that point, his prior surgical wound had healed, the ileostomy was working, he was in no pain, and he had gained and maintained a normal weight. Dr. Sternfeld admitted that reversing the ileostomy was not medically necessary.[1] Dr. Sternfeld also admitted to not consulting with Dr. Bais regarding the reversal.
 {¶ 10} Near the end of May 2001, Dr. Sternfeld reversed the ileostomy. Dr. Sternfeld encountered "significant adhesions" in Paul's bowel during the surgery. When loosening the adhesions during surgery in order to reconnect the bowel, Dr. Sternfeld documented that he made two small openings into the bowel.
 {¶ 11} Three days after the surgery, Paul's wounds began to open and fistulas were present. The fistulas manifested to the naked eye as green bowel content leaking out of the wound. Dr. Sternfeld was unavailable for ten days after Paul's surgery. Another *Page 4 
physician's bedside attempt to close the fistulas failed. A few days later, a second physician's attempt to close the fistulas also failed.
 {¶ 12} Seven days after the reversal, Nancy Pickens, R.N., wound care specialist, charted Paul's wound at 30 by 30 centimeters large. By Dr. Sternfeld's admission, it was a "big wound," and Pickens testified that it was among the largest she had ever seen. By the twelfth day after surgery, the wound had started to discharge bowel content. Somatostatin, used to decrease drainage, was administered to little effect.
 {¶ 13} Over the next six and a half months, Paul continued to have multiple fistulas, meaning that the wound never healed. A caustic, greenish mixture of gastric contents, bile, and digestive enzymes continually leaked from the wound, requiring constant drainage, swabbing, and wound cleaning. According to Dr. Sternfeld, the leakage was caustic enough to dissolve skin and fat, and, because it contained bacteria, was potentially infectious. His need for constant wound care did not cease from the time of the reversal until his death.
 {¶ 14} In June, Paul began experiencing nonstop, uncontrollable vomiting. In early August, Dr. Sternfeld performed another surgery to remove a section of small intestine with four fistulas. Leaks continued to occur.
 {¶ 15} Four days later, Paul's bowels eviscerated out of his abdominal cavity, meaning that the bowels extended out of the normal bowel space through the skin and were unable to be replaced. Dr. Sternfeld performed another surgery, attempting to ease *Page 5 
the evisceration by covering the bowel portion outside the body with a "silo," a clear plastic bag, and stapling the bag to the exterior skin to keep it in place.
 {¶ 16} But within days, the bowel swelled and ripped the silo away from the skin. The silo procedure was repeated, with parachute silk. Since Paul's wound refused to heal, he was moved to the intensive care unit. Bacteria and yeast infections did not abate and caused high fevers. For a time, he was on a ventilator. Kidney failure required dialysis. During the large majority of his hospitalization, Paul could not eat or drink and was sustained intravenously. Dr. Sternfeld agreed that during that time, Paul's existence was "rather dreadful."
 {¶ 17} Nancy Pickens, R.N., an enterostomal therapist specializing in managing complex wounds from colostomies, ileostomies, and urostomies, saw Paul twice a week in the hospital to help care for his wound. When asked whether Paul ever indicated to her that he was in pain, she explained that he was a "very quiet man," a "stoic-type individual" who "very rarely verbalized that he was uncomfortable." She testified, however, that she "never really sensed that he was in any severe discomfort" because he did not complain about pain. She did acknowledge that Paul received morphine during the majority of his hospitalization.
 {¶ 18} Leila Couture-Perron, Paul's daughter, testified that she, her husband and three children, lived a few miles from Paul's house and would visit him at least a couple of times a week. John Couture, Paul's son, and John's wife Mary, testified that they and their three children lived a few houses away from Paul and would see him several times a *Page 6 
week. James Couture, Paul's other son, worked with Paul and was married in the hospital chapel so that Paul could be there.
 {¶ 19} Paul's children would take turns visiting him in the hospital every day after the ileostomy reversal. Each of his children testified that Paul was not "a complainer" and did not want to show pain in front of them. They would see Paul cringe and not move very much because moving caused friction which caused pain. Although Paul did not describe the pain to his children, his pain was evident to them. Each described Paul as experiencing hallucinations and depression.
 {¶ 20} Paul died as a result of septicemia and multi-organ failure due to infection, approximately six and a half months after the ileostomy reversal. Just prior to the ileostomy reversal, Paul weighed 202 pounds. At his death, he weighed less than 100 pounds. Dr. Sternfeld admitted that the infections were due to fistulas that could not be corrected, and that the fistulas would not have occurred but for the ileostomy reversal.
 II. Law {¶ 21} The decision to grant a motion for a new trial pursuant to Civ. R. 59 rests in the discretion of the trial court. Sharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 312. An appellate court may not reverse the trial court's decision to deny a new trial unless an abuse of discretion occurred. Green v. Castronova (1966), 9 Ohio App.2d 156,158. *Page 7 
 {¶ 22} Couture moved for a new trial on the issue of damages pursuant to Civ. R. 59(A)(4), (6), and (7). Those sections provide the following three grounds to grant a new trial:
 {¶ 23} "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 {¶ 24} "* * *
 {¶ 25} "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
 {¶ 26} "(7) The judgment is contrary to law * * *."
 {¶ 27} These three grounds allow reversal of a damage award if the"verdict is so gross as to shock the sense of justice and fairness,cannot be reconciled with the undisputed evidence in the case, or is theresult of an apparent failure by the jury to include all the items ofdamage making up the plaintiff's claim." Scott v. Condo, 1st Dist. No. C-010123, 2002-Ohio-2148, citing Bailey v. Allberry (1993),88 Ohio App.3d 432, 435, (emphasis in original). See, also, Iames v. Murphy
(1995), 106 Ohio App.3d 627, 631.
 {¶ 28} In denying the motion, the trial court stated only that it found no "passion, prejudice or misconception on the part of the jury." Therefore, the trial court failed to examine all grounds for a new trial raised by the motion.
 {¶ 29} "The purpose of a civil trial is to fully compensate the injured party for his losses." Miller v. Irvin (1988),49 Ohio App.3d 96, 98. Compensatory damages make an *Page 8 
injured party whole. "The fundamental rule of the law of damages is that the injured party shall have compensation for all of the injuries sustained." Fantozzi v. Sandusky Cement Prod. Co. (1992),64 Ohio St.3d 601, 612.
 {¶ 30} Compensatory damages include damages for pain and suffering, which compensate the injured party for anguish suffered while alive. Id., citing 4 Restatement of the Law 2d, Torts (1965), Section 903 et seq. Additionally, "the jury is permitted to award compensation for the mental suffering endured." Id. at 615, citing Smith v. Pittsburg[h],Fort Wayne Chicago Ry. Co. (1872), 23 Ohio St. 10, 18-19. Mental suffering includes "mental and emotional trauma." Id., citing Black's Law Dictionary (6 Ed. 1990) 1109. Loss of enjoyment of life is a separate measure of compensatory damages. Id. at 616-617.
 {¶ 31} Determining an amount of compensation "for human pain and suffering is perhaps the most difficult to determine. Such determination is susceptible of no mathematical or rule of thumb computation, and no substitute for simple human evaluation has been authoritatively suggested." Flory v. New York Cent. R. Co. (1959), 170 Ohio St. 185,190. Where, however, the manifest weight of the evidence demonstrates significant pain and suffering and no damages are awarded, a new trial on that issue alone is necessary to make the injured party whole.Iames v. Murphy, supra; Scott v. Condo, supra; Drehmer v. Fylak,163 Ohio App.3d 248, 2005-Ohio-4732.
 {¶ 32} Wrongful death damages are for the exclusive benefit of the decedent's surviving spouse, parents, and children, "all of whom are rebuttably presumed to have *Page 9 
suffered damages by reason of the wrongful death." R.C. 2125.02(A)(1). Wrongful death damages include reasonable funeral and burial expenses and injury and loss to the decedent's next of kin. R.C. 2125.02(A)(2). Some compensatory damages to the decedent's next of kin are allowed, including but not limited to loss of services, society and companionship as claimed by Couture. R.C. 2125.02(B). Damages for mental anguish suffered by the decedent's next of kin are in addition to, not in lieu of, other wrongful death damages. Ramage v. Central Ohio EmergencyServ., Inc. (1992), 64 Ohio St.3d 97, 105-106. Unlike other damages, however, there is no rebuttable presumption that the next of kin are entitled to damages for mental anguish. Id.
 {¶ 33} App. R. 12(D) authorizes an appellate court to order a new trial only of issues which resulted in prejudicial error and to allow issues free from error to stand. Mast v. Doctor's Hospital North (1976),46 Ohio St.2d 539, 541; Combs Trucking, Inc. v. Int. Harvester Co. (1984),12 Ohio St.3d 241, 243. "[E]rror as to one issue need not attach to others, and issues tried without error must be allowed to stand."Iames v. Murphy, 106 Ohio App.3d at 633. New trials on the issue of damages only are granted when liability is uncontested or supported by the weight of the evidence. Id.
 III. Analysis {¶ 34} The trial court exercised proper discretion in denying Couture's motion pursuant to Civ. R. 59(A)(4). However, the trial court abused its discretion in failing to address Civ. R. 59(A)(6), the abundant evidence of Paul's pain and suffering, and the unrebutted presumption that Paul's next of kin suffered wrongful death damages. The *Page 10 
zero damage award for Paul Couture's pain and suffering was against the manifest weight of the evidence. The trial court further abused its discretion by failing to apply separately the proper standard to the wrongful death damages suffered by Paul's next of kin.
 {¶ 35} Plainly, the award of zero damages for pain and suffering was inadequate and contrary to the manifest weight of the evidence. Dr. Sternfeld and Pickens testified that Paul Couture would have been in significant pain due to the surgery and the subsequent wound and evisceration. Appellees lamely point to Pickens' testimony that she never sensed Paul was in discomfort as evidence supporting the zero damage award. They also point to Paul's children, who testified that he would "never tell us when he was in pain" and "would never let it show" that he was in pain. Ample evidence demonstrated Paul's loss of enjoyment of life, since he spent the majority of his life since the ileostomy reversal bedridden and unable to eat. Evidence was also introduced regarding Paul's mental anguish and emotional distress. Given the facts, any inference from this testimony that Paul Couture did not experience pain and suffering, emotional distress and additional loss of enjoyment of life would be unreasonable. The zero damage award is against the manifest weight of the evidence. The jury's unreasonable failure to weigh the evidence of pain and suffering and loss of enjoyment of life requires a new trial. Kubilus v. Owens, 12th Dist. No. CA2007-03-065, 2008-Ohio-3728 (citing cases where zero damage awards for pain and suffering require new trial); Wines v. Flowers, 7th Dist. No. 06BE3, 2006-Ohio-6248 (collecting zero damage award cases); Brozovic v.Grandjean, *Page 11 
5th Dist. No. 2005CA00151, 2005-Ohio-6950; Scott v. Condo, supra;Drehmer v. Fylak, supra.
 {¶ 36} Appellees cite our decision in Tasch v. Chancey, 6th Dist. No. OT-00-051, 2002-Ohio-873, to argue that, where evidence of damages is contested and rebutted, a jury's award of zero damages should not be reversed. Tasch involved a jury's award of zero future damages for a knee injury. It is inapplicable here, however. Tasch held that the trial court erroneously granted a new trial on Civ. R. 59(A)(4) grounds, and did not examine Civ. R. 59(A)(6) or (7). Also, in Tasch, conflicting evidence was presented at trial regarding causation and the plaintiff's obesity as a contributing factor. Here, Dr. Sternfeld admitted that Paul Couture's injuries would not have occurred but for the ileostomy reversal. In this case, causation and liability are apparent.
 {¶ 37} The zero award for wrongful death damages is likewise against the manifest weight of the evidence. Paul's next of kin benefited from a statutory presumption that they suffered damages. Each testified to their close relationship with Paul and their damages from loss of that relationship. Appellees did not rebut this evidence at trial, and they do not contest the issue in their appellate brief. Because the trial court unreasonably disregarded the statutory presumption and appellee's failure to rebut the presumption, it abused its discretion and a new trial is warranted.
 {¶ 38} Where the issue of liability is established, and the sole prejudicial error on appeal is the award of damages, a retrial may be had on damages alone. Mast v. Doctor's Hospital North,46 Ohio St.2d at 541-542; Charles R. Combs Trucking, Inc. v. *Page 12 International Harvester Co., 12 Ohio St.3d at 243; Scott v. Condo, supra; Drehmer v. Fylak, supra. The parties have not appealed any error in the verdict as to liability. Appellant's assignment of error is well-taken.
 {¶ 39} The judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded for a new trial on the sole issue of damages pursuant to this decision and the applicable law. Appellees are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J., CONCUR.
[1] We omit discussion of the conflicting evidence and testimony of whether Dr. Sternfeld obtained Paul's informed consent, as the jury found Dr. Sternfeld not liable on this claim and Couture has not appealed that judgment. *Page 1