ANITA LASTER MAYS, J.:
*512 {¶ 1} In this consolidated appeal, defendants-appellants Chris Kalapodis, M.D. ("Dr. Kalapodis") and Lodi Community Hospital ("Lodi") (collectively "appellants") jointly challenge the trial court's judgments granting a new trial on the issue of noneconomic damages only, and the trial court's failure to apply the Patient Protection and Affordable Care Act ("ACA"), 42 U.S.C. 18001, et seq. to reduce the award of future economic damages as a collateral source. Lodi unilaterally attacks the trial court's rulings of liability pursuant to agency by estoppel. We affirm the trial court's findings.
I. Facts and Background
{¶ 2} On October 10, 2014, plaintiffs-appellees Aaron Riedel ("Riedel") and his minor daughters Chloe and Paige Riedel (collectively "appellees") filed a medical malpractice and loss of consortium action against appellants and several other entities.
{¶ 3} Appellees complained that the untimely diagnosis of Riedel's spinal epidural abscess was the cause of Riedel's incomplete paraplegia. Dr. Kalapodis testified that, in spite of the presence of an active methicillin-resistant staphylococcus aureus ("MRSA") infection that was causing Riedel severe back pain, he failed to diagnose the abscess during Riedel's May 22, 2013 emergency room visit.
{¶ 4} On June 24, 2016, the jury issued a verdict against appellants, jointly and severally. Riedel was awarded $5,200,000 in economic damages, but no noneconomic damages. Each daughter was awarded $200,000 in noneconomic damages for the loss of consortium claims.
{¶ 5} Appellees filed a motion for a new trial for noneconomic damages, while appellants filed to set-off economic damages. Appellants' pretrial motion to introduce evidence addressing the impact of the ACA on damage awards was defeated by appellees' motion in limine, granted on May 25, 2016. Appellants filed a post-trial motion, advocating application of the ACA to offset economic damages awarded by the jury in this case. Lodi also filed motions for judgment notwithstanding the verdict and a new trial pursuant to Civ.R. 50(B) and 59.
{¶ 6} On August 17, 2016, the trial court held hearings on the pending motions. On August 31, 2016, the trial court issued three entries resolving the issues.
{¶ 7} In the first entry the trial court denied appellants' motion to set-off economic damages under the ACA:
This court finds that Jones v. Metrohealth Med. Ctr. , 2016-Ohio-4858, 68 N.E.3d 281, ¶ 1 (8th Dist.) does not apply because this case does not involve a political subdivision.
Motion of defendants Lodi Community Hospital to conduct post trial evidentiary hearing on set-off of economic damages award, filed 07/11/2016, is denied.
Motion to conduct post trial evidentiary hearing on set of economic damages award on behalf of defendant Chris Kalapodis, M.D., filed 07/08/16, is denied.
{¶ 8} The second entry summarily denied Lodi's motions under Civ.R. 50(B) and 59. The third entry granted appellees' motion for a new trial on noneconomic damages, explaining that:
In Ford v. Sekic , [8th Dist. Cuyahoga No. 98835], 2013-Ohio-1895 [2013 WL 1932789], ¶ 13, the Eighth District Court *513 of Appeals acknowledged that "when a plaintiff receives damages for medical expenses but does not receive an award of damages for past pain and suffering, and where there is evidence supporting such damages, such judgment is against the manifest weight of the evidence," quoting Juarez v. Osterman , 10th Dist. [Franklin] No. 98 AP-1221 [1999 WL 604135], 1999 Ohio App. LEXIS 6536 (Aug. 12, 1999). See also Cooper v. Moran , 11th Dist. [Lake] No. 2010-L-141, 2011-Ohio-6847 [2011 WL 6938587], ¶ 21-23 ; Boldt v. Kramer , 1st Dist. [Hamilton] No. C-980235 [1999 WL 299888], 1999 Ohio App. LEXIS 2140 (May 14, 1999). The court went on to say that "under circumstances where a substantial injury is sustained and there is unrefuted evidence of pain and suffering, courts have found that an award for medical expenses without any valuation for pain and suffering is against the manifest weight of the evidence." Id. See Cooper at ¶ 21-22 ; Garaux v. Ott, 5th Dist. [Stark] No. 2009 CA 00183, 2010-Ohio-2044 [2010 WL 1839444], ¶ 26 ; Hardy v. Osborn , 54 Ohio App.3d 98, 560 N.E.2d 783 (8th Dist.1988). The court found that "a new trial on that issue alone is necessary to make the injured party whole." Id. , quoting Couture v. Toledo Clinic, Inc. , [6th Dist. Lucas No. L-07-1277], 2008-Ohio-5632 [2008 WL 4763247], [¶ 31].
{¶ 9} Dr. Kalapodis appealed in 8th Dist. Cuyahoga No. 104692 on September 16, 2016, and Lodi on September 19, 2016 in 8th Dist. Cuyahoga No. 104968. Appellees' unopposed motion to consolidate the appeals was granted.
II. Assignments of Error
{¶ 10} Appellants jointly proposed the first two assigned errors while Lodi unilaterally seeks relief in assigned errors three and four:
I. Appellants' Common First Assigned Error: the trial court erred in limiting the new trial in this case to noneconomic damages only.
II. Appellants' Common Second Assigned Error: the trial court erred by not reducing the future economic damages award under the provisions of the Affordable Care Act.
III. Lodi's Third Assignment of Error: the trial court erred by failing to grant a directed verdict and/or a judgment notwithstanding the verdict in favor of Lodi Community Hospital on plaintiffs' agency by estoppel claim.
IV. Lodi's Fourth Assignment of Error: the trial court erred by failing to grant a new trial on whether Lodi Community Hospital can be held vicariously liable for the alleged malpractice of Chris Kalapodis, M.D. based upon an agency by estoppel theory.
III. Analysis
A. New Trial Under Civ.R. 59
1. Standards of Review
{¶ 11} For the first assigned error, Dr. Kalapodis claims entitlement to a new trial on both economic and noneconomic damages under Civ. R. 59(A)(1) citing irregularity of the proceedings preventing a fair trial, and under Civ.R. 59(A)(6) asserting the verdict is against the manifest weight of the evidence. In addition, Lodi claims entitlement to a new trial under Civ.R. 59(A)(4), for excessive or inadequate damages due to prejudice or passion, and Civ.R. 59(A)(7), which permits a new trial where the judgment is contrary to law.
*514 {¶ 12} We review motions under Civ.R. 59(A)(1), (4) and (6) for an abuse of discretion. Zappola v. Rock Capital Sound Corp. , 8th Dist. Cuyahoga No. 100055, 2014-Ohio-2261, 2014 WL 2466049, ¶ 65 ; McCall v. Mareino, 138 Ohio App.3d 794, 798, 742 N.E.2d 668 (8th Dist.2000) ; Peters v. Peters , 8th Dist. Cuyahoga No. 55453, 1989 WL 59253, 3 (June 1, 1989). "The decision lies within the sound discretion of the trial court and shall not be reversed absent a showing that its decision was unreasonable, arbitrary, or unconscionable." Dzina v. Dzina , 8th Dist. Cuyahoga No. 83148, 2004-Ohio-4497, 2004 WL 1902566, ¶ 76. An abuse of discretion " 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting State v. Adams , 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).
{¶ 13} Civ.R. 59(A)(7) permits a new trial where the judgment is contrary to law and requires de novo review. "The role of this court, when reviewing the grant or denial of a motion for new trial based upon Civ.R. 59(A)(7) is to decide whether the judge erred as a matter of law." Baeppler v. McMahan , 8th Dist. Cuyahoga Nos. 74938, 75131, and 76042, 2000 WL 377506, 6 (Apr. 13, 2000), citing Pangle v. Joyce, 76 Ohio St.3d 389, 391, 667 N.E.2d 1202 (1996), citing O'Day v. Webb , 29 Ohio St.2d 215, 280 N.E.2d 896 (1972), paragraph one of the syllabus.
2. Discussion
{¶ 14} Appellants argue that a new trial should be granted on both economic and noneconomic damages because the issues are inextricably intertwined. Appellants rely on R.C. 2315.18 and 2323.43 that impose statutory caps on noneconomic damage awards.
{¶ 15} R.C. 2315.18 prescribes the "procedures for imposing tort damages." Simpkins v. Grace Brethren Church of Delaware , 149 Ohio St.3d 307, 2016-Ohio-8118, 75 N.E.3d 122, ¶ 3. The jury's interrogatories and general verdict must specify the total compensatory damages to be recovered, and identify the economic and noneconomic portions. Id., citing R.C. 2315.18(D). Judgment is then entered by the trial court for the total economic damages and for the noneconomic damages up to the limits set forth in R.C. 2315.18(B)(1), (B)(2), and (E)(1).
{¶ 16} Exceptions apply to the caps:
The damage caps on noneconomic loss do not apply where the noneconomic loss is for "[p]ermanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system" or for "[p]ermanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities." R.C. 2315.18(B)(3)(a) and (b).
Simpkins at ¶ 5. See also Di v. Cleveland Clinic Found. , 2016-Ohio-686, 60 N.E.3d 582, ¶ 129 (8th Dist.).
{¶ 17} R.C. 2323.43 limits damages for noneconomic losses for "medical, dental, optometric or chiropractic" claims. Id. The statute was promulgated to stabilize health costs by "limiting the amount of compensatory damages representing noneconomic loss awards in medical malpractice actions." Id. at Section 3(A)(3) Notes. "[T]he limits on compensatory damages for noneconomic loss are applied after a jury's determination of the factual question of damages." Id. at Section 3(A)(4)(c) Notes. R.C. 2323.43 limits noneconomic damages to the lesser of $250,000 or triple the amount of economic damages up to $350,000 for noncatastrophic injuries, and $500,000 for catastrophic injuries. R.C. 2323.42(A)(2) and (A)(3).
*515 {¶ 18} Noneconomic losses are defined as:
[N]onpecuniary harm that results from an injury, death, or loss to person or property that is a subject of a civil action upon a medical, dental, optometric, or chiropractic claim, including, but not limited to, pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, disfigurement, mental anguish, and any other intangible loss.
R.C. 2323.43(H)(3).
{¶ 19} Appellants state that the jury "clearly lost its way," because the $5,200,000 future economic damages award cannot be explained mathematically based on the estimates proffered by the experts for both parties. As a result, appellees offer that the sole explanation for the award amount "is that it constitutes a blending of economic and noneconomic damages, despite the express language of the jury interrogatories agreed to" by the parties.
{¶ 20} Appellees' experts Darlene Carruthers ("Carruthers"), a life care plan expert, and economist John Burke, Ph.D. ("Burke"), testified to the scope and present value of the life care plan respectively. Carruthers provided extensive details of the future care requirements. Burke calculated the present value of Carruthers's life care plan at $8,725,320 with a life expectancy of 78 years.
{¶ 21} Appellants' expert, John Scarbrough, Ph.D. ("Scarbrough"), provided a range of life expectancy and estimate quotes, and determined that the life care plan with a life expectancy of 78 years totaled $4,654,038. Appellees argue that Scarbrough's estimate did not include the higher hourly rate of hiring a home health care agency aide versus a personal attendant, though Riedel's aide at the time of trial was employed by an agency. Scarbrough's estimate also omitted the cost of a handicapped equipped vehicle. Appellees posit that correcting Scarbrough's data to increase the aide cost by seven percent, and adding $30,000 per five-year period for the cost of a handicapped vehicle, would increase Scarbrough's estimate to $5,004,352, close to the $5,200,000 verdict. The jury was provided with the economic experts' figures and could easily have recognized this.
{¶ 22} Appellants reject appellees' suggestion that adding the omitted costs supports the $5,200,000 verdict, arguing there is no indication that the jury considered this data or that the sums are adjusted for present value. Citing the difference between the $8,725,320 estimate by Burke and the $4,654,038 by Scarbrough, appellees' offer that there is no "rational basis" for the jury's determination, and that the "only explanation for the damages award" is that it blends "economic and noneconomic damages," and the award amounts to a "windfall" of damages exceeding the aforementioned statutory caps on noneconomic damages. Appellants' point to appellees' closing argument asking the jury to award " '$500,000 for Aaron and $250,000 for each of his daughters that was above and beyond the life care plan' " as the "best" explanation for the verdict.
{¶ 23} On the issue of damages, the jury was advised:
(1) not to speculate or to consider insurance;
(2) that plaintiffs presented an 81 year average life expectancy for a 31-year-old Caucasian male while defendants offered a life expectancy of 73.7 due to the spinal cord injury, and that the additional factors of obesity and smoking could not be quantified;
*516 (3) the measure of damages is measured as the present value of the pecuniary loss;
(4) a quotient verdict based on an average amount may not be entered unless at least six jury members individually accept the amount;
(5) not to opine based on sympathy;
(6) consideration of a unit value or mathematical formula may not be considered to compensate for pain and suffering, and that deciding on compensation for the disability, pain and suffering is solely the jury's responsibility; and
(7) how to complete the jury interrogatories.
{¶ 24} Jury instruction No. 17 defined economic and noneconomic loss. Noneconomic loss is defined as "including, but not limited to, pain and suffering, loss of society, lack of enjoyment of life, disfigurement, mental anguish and any other intangible loss."
{¶ 25} Jury interrogatory Nos. 1 and 2 reflect the jury's written findings that Dr. Kalapodis was negligent and that the negligence served as the proximate cause of the injuries. The trial court read for the record the jury's written explanation for the conclusion that Dr. Kalapodis was negligent:
Patient presented with severe and unrelenting radiating back pain [pain level at], 9/10 (previous night was 7/10 despite pain medication) on the pain meter. Dr. Kalapodis reasonably looked at kidney problems as source and reasonably ruled them out based on CT. Dr. Kalapodis knew about Bactrim"for something" and claims to have read Dr. Gizzo's dictated notes which stated MRSA in medical history. We find that a reasonable physician having ruled out kidney stones and with knowledge in medical history of current and recent Bactrim use should have investigated further into the source of severe, radiating back pain and this investigation should have led to nerve root pressure as possible source leading to further investigation (MRI).
(Tr. 1225-1226.)
{¶ 26} Jury interrogatory No. 4 lists the jury's findings on damages:
Please state the amount of damages, if any, which you award to Plaintiff Aaron Riedel that represents economic damages and the amount that represents noneconomic damages.
Economic damages awarded to Aaron Riedel: $5,200,000 Noneconomic damages awarded to Aaron Riedel: $ 0 Total Damages: $5,200,000
Please state the amount of damages, if any, which you award to Plaintiff Aaron Riedel that represents economic damages and the amount that represents noneconomic damages.
Economic damages awarded to Aaron Riedel: $5,200,000 Noneconomic damages awarded to Aaron Riedel: $ 0 Total Damages: $5,200,000
*517 The daughters were awarded $200,000 each, as set forth in jury interrogatory No. 5.
{¶ 27} The jury also determined in jury interrogatory No. 3 that Lodi:
[H]eld itself out to the public as a provider of medical services and that Aaron Riedel reasonably looked to Lodi Community Hospital as opposed to defendant, Dr. Kris Kalapodis, to provide competent medical care. And that Aaron Riedel had no notice of knowledge that the hospital was not responsible for the care rendered by Dr. Kalapodis.
{¶ 28} The jury, as the trier of fact, "was free to accept or reject any or all of appellants' evidence relating to damages." Marzullo v. J.D. Pavement Maintenance , 2011-Ohio-6261, 975 N.E.2d 1, ¶ 55 (8th Dist.), citing Ayers v. Ishler, 5th Dist. Delaware No. 11 CAE 01 0001, 2011-Ohio-4272, 2011 WL 3806353, ¶ 60, citing Peck v. Ryan , 12th Dist. Butler No. CA87-09-120, 1988 WL 71614, 2 (1988). Thus, we cannot say the jury abused its discretion and appellants are not entitled to a new trial under Civ.R. 59(A)(1) and (4).
{¶ 29} Appellants also argue that they are entitled to a new trial under Civ.R. 59(A)(6), as the jury's verdict was against the manifest weight of the evidence. We will not overturn the trial court's decision where there is " 'some competent credible evidence going to all the essential elements of the case.' " Shaw Steel, Inc. v. Ronfeldt Mfg., L.L.C. , 8th Dist. Cuyahoga No. 102665, 2016-Ohio-1117, 2016 WL 1071455, ¶ 31, quoting C.E. Morris Co. v. Foley Constr. Co. , 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.
{¶ 30} The resolution of conflicts in evidence and the credibility of the witnesses and resolutions of conflicts in evidence are matters for the trier of facts. " '[A] reviewing court should not reverse a trial court's decision if it merely has a difference of opinion on questions of credibility or the weight of the evidence * * *.' " Id. , quoting Seasons Coal Co. v. Cleveland , 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). " 'A trial court's decision should be overturned only when there is no competent and credible evidence to support that decision.' " Id., quoting Seasons Coal Co. "We therefore indulge every reasonable presumption in favor of the trial court's judgment." Berry v. Lupica , 196 Ohio App.3d 687, 2011-Ohio-5381, 965 N.E.2d 318, ¶ 22 (8th Dist.).
{¶ 31} Expert testimony is required to support future treatment, expenses, medical care, permanency of injuries, length of health impairment, and pain and suffering. Marzullo , 2011-Ohio-6261, 975 N.E.2d 1, at ¶ 33, citing Day v. Gulley, 175 Ohio St. 83, 191 N.E.2d 732 (1963), and Tully v. Mahoning Express Co., 161 Ohio St. 457, 119 N.E.2d 831 (1954).
{¶ 32} Here, the jury determined that Dr. Kalapodis's negligence was the proximate cause of Riedel's paraplegia. The parties submitted detailed expert reports and analyses supporting the cost and scope of the life care plan for the permanent disability. The jury's award was not outside of the range of the minimum and maximum estimates.
{¶ 33} "Once a plaintiff establishes a right to damages, plaintiff's right will not be denied merely because the damages cannot be calculated with mathematical certainty." Austin v. Chukwuani, 2017-Ohio-106, 80 N.E.3d 1199, ¶ 21, citing Marzullo at ¶ 55. We reiterate that the jury "was free to accept or reject any or all of appellants' evidence relating to damages." Marzullo at ¶ 55.
{¶ 34} Further to appellants' arguments that a hearing or new trial is required on both economic and noneconomic *518 damages, the trial court held, and we agree, that the validity of the economic damages verdict is not in question, nor are economic damages and noneconomic damages inextricably intertwined in this case:
[U]nder circumstances where a substantial injury is sustained and there is unrefuted evidence of pain and suffering, courts have found that an award for medical expenses without any valuation for pain and suffering is against the manifest weight of the evidence. (Citations omitted.) * * *
While we agree that an award for pain and suffering is not automatic, the denial of such damages may be overturned when the record demonstrates the judgment is against the manifest weight of the evidence. Indeed, "[w]here * * * the manifest weight of the evidence demonstrates significant pain and suffering and no damages are awarded, a new trial on that issue alone is necessary to make the injured party whole ." Couture v. Toledo Clinic, Inc. , 6th Dist. No. L-07-1277, 2008-Ohio-5632 [2008 WL 4763247], ¶ 31.
(Emphasis added.) Ford , 8th Dist. Cuyahoga No. 98835, 2013-Ohio-1895, 2013 WL 1932789, at ¶ 13-14.
{¶ 35} We find that the jury's verdict is not against the manifest weight of the evidence pursuant to Civ.R. 59(A)(6) as it is supported by competent, credible evidence. Shaw Steel, Inc., 8th Dist. Cuyahoga No. 102665, 2016-Ohio-1117, 2016 WL 1071455, at ¶ 31. "Thus, we must presume that the jury's verdict is correct." Austin at ¶ 41.
{¶ 36} Our analysis also refutes Lodi's challenge under Civ.R. 59(A)(7), that granting a new trial based on noneconomic damages only is "reversible legal error" because the trial court misapplied "the legal standards that govern the issue." Lodi's premise is that, under Ohio law: (1) a new trial on damages alone may only be granted where liability is not contested;[1] (2) a new trial must encompass all of the issues affected by a "tainted verdict";[2] and (3) where the issues are inextricably intertwined, a new trial on one issue requires retrial of the connected issues to avoid potentially redundant appeals.[3]
{¶ 37} We have already determined that the verdict was not against the manifest weight of the evidence and was certainly within the province of the jury. We also cite our holding in Ford for the premise that a new trial on the issue of pain and suffering alone is wholly appropriate. Ford , 8th Dist. Cuyahoga No. 98835, 2013-Ohio-1895, 2013 WL 1932789, at ¶ 13-14.
{¶ 38} The first assigned error is without merit.
B. Reduction of Future Economic Damages under the ACA
{¶ 39} The second assigned error challenges the trial court's refusal to offset damages under the ACA based on this court's decision in Jones , 2016-Ohio-4858, 68 N.E.3d 281. At the time of oral argument, the Jones case was pending reconsideration. Jones was vacated and overruled by Jones v. MetroHealth Med. Ctr. , 2017-Ohio-7329, 89 N.E.3d 633 (" Jones ").
*519 {¶ 40} Jones considered the question of offsets against damages required by R.C. 2744.05(B)(1), and the collateral source rule that applies to political subdivisions, such as Social Security and Medicaid per R.C. 2744.05(C)(1). Id. at ¶ 33, citing Buchman v. Bd. of Edn. , 73 Ohio St.3d 260, 652 N.E.2d 952 (1995), paragraph three of the syllabus.
{¶ 41} In Jones , a jury verdict was awarded in a medical malpractice action for injuries to A.J. ("child"), an infant born at 25 weeks with visual impairment, cerebral palsy, and developmental delays requiring 24-hour care for his life. Jones at ¶ 5. The jury awarded past economic damages of $500,000, noneconomic damages of $5 million and future economic damages of $8 million to the infant. The mother, Stephanie Stewart ("mother"), received a noneconomic award of $1 million.
{¶ 42} At a post-verdict hearing to determine statutory collateral benefit offsets and damage caps pursuant to R.C. 2744.05(C)(1), the child's $5 million award and mother's $250,000 award for noneconomic damages were capped at $250,000 each. Per R.C. 2744.05(B)(1), the trial court also considered two offsets for collateral sources: one against the child's $500,000 award for past economic damages; and the second against the child's $8 million award for future economic damages. Uncontradicted expert testimony was offered that mother and child did not experience any out-of-pocket costs due to Medicaid and Social Security. Id. Thus, the trial court determined that the "past medical bills were included in the award for past economic damages." Id. at ¶ 9.
{¶ 43} The court then decided that, since the child would be covered by Medicare due to the father's disability when the child attained the age of 20, the child could secure insurance under the ACA until that time:
[T]he child's maximum expenses for the eight-year period would be $116,000: a maximum $8,000 per year premium for medical insurance and a yearly, maximum out-of-pocket expense of $6,500. The court concluded that expenses allocated in the life care plan should be offset in their entirety (excepting costs for transportation, home care, and housing) and that the remaining amount should be offset by 80 percent to account for what Medicare would cover. After making these deductions, the court reduced the child's award for future economic damages to $2,951,291.
Jones at ¶ 10.
{¶ 44} Pertinent to our analysis in the instant case, we approved the trial court's offset in Jones against the life care plan award amount of Social Security/Medicare and the ACA. We rejected the mother's challenges that: (1) the continued "viability" of the government programs "are subject to political whim"; and (2) the trial court could not "determine, to the requisite degree of reasonable certainty" the offset entitlement because of the precarious future of the ACA. Id. at ¶ 54. The mother failed to provide a "plausible basis for us to conclude that these programs will cease to exist in the near future." Id. at ¶ 54. Accepting her position would "effectively bar all offsets of this nature because of the possibility" that the ACA may end. Id. "Receiving, or being eligible to receive, such benefits are at the heart of R.C. 2744.05." Id. See Buchman, 73 Ohio St.3d 260, 652 N.E.2d 952, at paragraph two of the syllabus.
{¶ 45} Thus, it is clear that the analysis in Jones applied due to the status of MetroHealth as a political subdivision and to promote the policy and purposes of Chapter 2744 to prevent double recovery:
R.C. 2744.05(B)(1) is extraordinary because the right to offset cannot be *520 waived-if a claimant receives or is entitled to receive benefits for injuries or loss from any source, "the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant."
(Emphasis sic.) Id. at ¶ 44, quoting R.C. 2744.05(B)(1).[4]
{¶ 46} Appellants urge us to apply the Jones rationale in the instant case. We were guided in Jones by the Ohio Supreme Court's decision in Buchman . Buchman considered the question of the deductibility of Medicare and Social Security benefits as "collateral benefit deductions under R.C. 2744.05." Id. at 264, 652 N.E.2d 952. Pertinent here, the court distinguished the rationale for collateral benefits under R.C. 2744.05(B) and 2305.27, the precursor to R.C. 2323.41 governing collateral benefits in medical, dental, optometric, and chiropractic claims.[5]
{¶ 47} Buchman determined that " R.C. 2305.27, unlike R.C. 2744.05(B), draws a distinction between collateral benefits on the basis of who pays the premiums or underwrites the cost of the program." Id. at 265, 652 N.E.2d 952. Medicaid " 'is a benefit received as part of a public program.' " Id. at 264, 652 N.E.2d 952, quoting Galanos v. Cleveland , 70 Ohio St.3d 220, 221, 638 N.E.2d 530 (1994). As a result, the court determined that "Social Security and Medicare benefits are the type of collateral source benefits contemplated by R.C. 2744.05(B)." Id. at paragraph two of the syllabus. "It would clearly contravene the design of the statute to permit recovery of future losses from a political subdivision without allowing an offset for corresponding future collateral benefits." Id. at 266, 652 N.E.2d 952.
{¶ 48} R.C. 2323.41 changed the rules on subrogation and collateral source benefits. It provides:
(A) In any civil action upon a medical, dental, optometric, or chiropractic claim, the defendant may introduce evidence of any amount payable as a benefit to the plaintiff as a result of the damages that result from an injury, death, or loss to person or property that is the subject of the claim, except if the source of collateral benefits has a mandatory self-effectuating federal right of subrogation, a contractual right of subrogation, or a statutory right of subrogation.
(B) If the defendant elects to introduce evidence described in division (A) of this section, the plaintiff may introduce evidence of any amount that the plaintiff has paid or contributed to secure the plaintiff's right to receive the benefits of which the defendant has introduced evidence.
(C) A source of collateral benefits of which evidence is introduced pursuant to division (A) of this section shall not recover any amount against the plaintiff nor shall it be subrogated to the rights of the plaintiff against a defendant.
(D) As used in this section, "medical claim," "dental claim," "optometric claim," and "chiropractic claim" have the same meanings as in section 2305.113 of the Revised Code.
(Emphasis added.) Id.
{¶ 49} We look to the legislative intent and analysis in repealing R.C. 2305.07 and enacting R.C. 2323.41(A) for guidance:
*521 The act repeals R.C. 2305.27, which contained language on collateral recovery and subrogation in connection with awards on medical claims. The act enacts R.C. 2323.41 to govern collateral recovery and subrogation in connection with civil actions upon medical, dental, optometric, and chiropractic claims.
Prior law provided that an award of damages in a medical claim is not to be reduced by insurance proceeds, payments, or other benefits paid under any insurance policy or contract paid for by the plaintiff, the plaintiff's employer, or both, but is to be reduced by any other collateral recovery for medical and hospital care, custodial care or rehabilitation services, and loss of earned income. It also provided that a collateral source of indemnity is not to be subrogated to the claimant against a physician, podiatrist, or hospital, unless otherwise expressly provided by statute. (Repealed R.C. 2305.27.)
The act permits a defendant to introduce evidence of any amount payable as a benefit to the plaintiff as a result of damages that result from an injury, death, or loss to person or property that is the subject of the claim, except if the source of collateral benefits has a mandatory self-effectuating federal right of subrogation, a contractual right of subrogation, or a statutory right of subrogation.
If a defendant introduces evidence of a plaintiff's right to receive collateral benefits, the plaintiff may introduce evidence of any amount the plaintiff has paid or contributed to secure any benefits which the defendant has introduced into evidence. A source of collateral benefits, of which evidence is introduced by the defendant, is prohibited from recovering any amount against the plaintiff and may not be subrogated to the plaintiff's rights against a defendant. ( R.C. 2323.41.)
(Emphasis added.) Am.Sub.S.B. 281, Final Bill Analysis.
{¶ 50} Concurrently and conversely, the legislature amended R.C. 2744.05 to allow an offset for collateral sources regardless of whether a plaintiff is required to pay back benefits upon recovery:
The former collateral benefits provisions are changed (1) to require a deduction of benefits from an award against a political subdivision regardless of whether a claimant is under an obligation to pay the benefits back after a recovery and (2) to specify that a claimant whose benefits are deducted from an award is not considered fully compensated and cannot be required to reimburse a subrogated claim for benefits ( R.C. 2744.05(B)(1) ).
Am.Sub. S.B. 106, 124th as passed by the General Assembly, Final Bill Analysis. Effective April 9, 2003. Distilled, under R.C. 2323.41 a medical malpractice defendant is permitted to introduce collateral benefits evidence except where a right of subrogation exists, be it statutory or contractual. See Foust v. Taylor, N.D.Ohio No. 5:02 CV 0162, 2003 WL 25676459, 2-3 (June 27, 2003).
{¶ 51} We also look to the history and rationale underlying the collateral benefits rule. "The collateral source rule has been defined as the 'judicial refusal to credit to the benefit of the wrongdoer money or services received in reparation of the injury caused which emanates from sources other than the wrongdoer.' " Pryor v. Webber , 23 Ohio St.2d 104, 107, 263 N.E.2d 235 (1970), quoting Maxwell, The Collateral Source Rule in the American Law of Damages , 46 Minn. L.Rev. 669, 670 (1962). Inequity will lie in allowing a "defender wrongdoer" to receive the "benefit of payments that come to the plaintiff from a *522 'collateral source' " such as "proceeds of an accident insurance policy" or "medical expenses paid by another." Id. at 108, 263 N.E.2d 235.
{¶ 52} As later construed,
"The collateral source rule is an exception to the general rule of compensatory damages in a tort action, and evidence of compensation from collateral sources is not admissible to diminish the damages for which a tort-feasor must pay for his negligent act." State ex. rel. Stacy v. Batavia Local Sch. Dist. Bd. of Edn. , 105 Ohio St.3d 467 [476], 2005-Ohio-2974, at ¶ 38, 829 N.E.2d 298, quoting Pryor [v. Webber ], 23 Ohio St.2d [104, 263 N.E.2d 235 (1970) ], at paragraph two of the syllabus.
Ferrell v. Summa Health Sys. , 165 Ohio App.3d 110, 2005-Ohio-5944, 844 N.E.2d 1233, ¶ 8 (9th Dist.).
{¶ 53} Generally, "the collateral-source rule allows plaintiffs to seek recovery of the reasonable value of medical services without consideration of [or offsets for] payments made on their behalf by insurance." Id. at ¶ 9, citing Robinson v. Bates , 160 Ohio App.3d 668, 2005-Ohio-1879, 828 N.E.2d 657, ¶ 83 (5th Dist.). However, for political subdivisions, the offset is mandatory; " 'the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant.' " Jones, 2017-Ohio-7329, 89 N.E.3d 633, ¶ 7, quoting R.C. 2744.05(B)(1).
{¶ 54} "The purpose of R.C. 2744.05(B) is to permit recovery by injured persons for torts committed by political subdivisions while at the same time conserving the fiscal resources of those political entities." Galanos v. Cleveland , 70 Ohio St.3d 220, 221, 638 N.E.2d 530 (1994), citing Menefee v. Queen City Metro , 49 Ohio St.3d 27, 550 N.E.2d 181 (1990). "The statute expressly states that its provisions apply '[n]otwithstanding any other provisions of the Revised Code * * *.' " Id.
{¶ 55} Rogge v. Estes Express Lines , N.D.Ohio No. 3:13CV1227, 2014 WL 5824766, 5 (Nov. 10, 2014), is instructive here. The plaintiff was employed by a towing company and was operating a tow truck when he was hit by defendant who was driving a tractor trailer. Plaintiff moved to preclude evidence regarding workers' compensation benefits payable to plaintiff and also relating to the ACA in his personal injury suit against defendant and defendant's employer. Id. at 5.
{¶ 56} The trial court determined that the workers' compensation evidence was clearly excluded due to the statutory subrogation rights. (See , e.g. , R.C. 2323.41.) On the question of the ACA, the trial court stated:
According to the defendants, the ACA individual mandate makes it reasonably likely that the plaintiff will purchase private insurance. Even if that assumption were accurate-and it is, at best, questionable-there are two reasons, at least, why I agree with plaintiff that any testimony about what the ACA might require and what the plaintiff might do is not admissible. * * *
[E]ven if the plaintiff were, for some reason, to purchase such insurance, it would, in all likelihood, give the carrier a right of subrogation. While defendants dispute plaintiff's contention that insurance carriers now routinely insert subrogation clauses in their policies, they offer nothing to contradict that contention. In other words, any testimony about the presence or absence of a subrogation right in an insurance policy (that plaintiff is not likely to waste money buying)
*523 is just as speculative for the defendants as they claim it is for the plaintiff.
Id. at 5.
{¶ 57} In the instant case, the report and affidavit of Jeffrey D. Zimon, Esq., submitted with appellees' trial court brief in opposition to appellants' motions for set-off, avers that an ACA compliant health plan will contain a contractual right of subrogation. We determined that R.C. 2323.41 applies in this case, excluding consideration of the ACA as a collateral benefit due to contractual, statutory, or federal rights of subrogation. Neither the statute ( R.C. 2744.05 ), nor the purpose or policy for political subdivision immunity are implicated in this case. The second assigned error is without merit.
C. Agency by Estoppel
{¶ 58} Lodi offers as a third assigned error that the trial court improperly denied Lodi's motion for directed verdict or for judgment notwithstanding the verdict on the agency by estoppel claim.
1. Standard of Review
{¶ 59} Motions for a directed verdict and for judgment notwithstanding the verdict test the sufficiency of the evidence as a matter of law. Zappola , 8th Dist. Cuyahoga No. 100055, 2014-Ohio-2261, 2014 WL 2466049, at ¶ 63 ; Lang v. Beachwood Pointe Care Ctr. , 2017-Ohio-1550, 90 N.E.3d 102, ¶ 11, citing McKenney v. Hillside Dairy Co. , 109 Ohio App.3d 164, 176, 671 N.E.2d 1291 (8th Dist.1995), and Austin, 2017-Ohio-106, 80 N.E.3d 1199, at ¶ 19.
{¶ 60} We review questions of law de novo. Taylor Bldg. Corp. of Am. v. Benfield , 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 34.
The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict. The evidence adduced at trial and the facts established by admissions in the pleadings and in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.
(Citations omitted.) Posin v. A. B. C. Motor Court Hotel, Inc. , 45 Ohio St.2d 271, 275, 344 N.E.2d 334 (1976) ; Civ.R. 50(A)(4).
2. Discussion
{¶ 61} Appellants and Lodi cite Clark v. Southview Hosp. & Family Health Ctr. , 68 Ohio St.3d 435, 628 N.E.2d 46 (1993), which held that respondeat superior does not generally apply to hold the hospital liable for an independent contractor's negligence, but which carved an exception under the theory of agency by estoppel.
A hospital may be held liable under the doctrine of agency by estoppel for the negligence of independent medical practitioners practicing in the hospital if it holds itself out to the public as a provider of medical services and in the absence of notice or knowledge to the contrary, the patient looks to the hospital, as opposed to the individual practitioner, to provide competent medical care. Unless the patient merely viewed the hospital as the situs where her physician would treat her, she had a right to assume and expect that the treatment was being rendered through hospital employees and that any negligence associated therewith would render the hospital liable.
*524 (Citations omitted.) Clark at 444-445, 628 N.E.2d 46, citing Albain v. Flower Hosp. , 50 Ohio St.3d 251, 553 N.E.2d 1038 (1990), paragraph four of the syllabus.
{¶ 62} Lodi argues that both prongs of the requirements must be met and that the evidence was insufficient to meet the second prong of the test because Riedel did not testify that he "looked to the hospital, as opposed to the individual practitioner, to provide competent medical care" and that he admitted that he was "going to be treated by a doctor" upon his arrival at the hospital. As a result, Lodi claims entitlement to a judgment notwithstanding the verdict or a directed verdict.
{¶ 63} Recently, the Sixth District Court of Appeals rejected a narrow interpretation of the second prong seeking a declaration that an unconscious individual transported to the hospital location was unable to demonstrate that he was seeking care from the hospital and not a particular physician, based partly on the public policy considerations as stated in Clark :
"[T]he emergency room has become the community medical center, serving as the portal of entry to the myriad of services available at the hospital. As an industry, hospitals spend enormous amounts of money advertising in an effort to compete with each other for the health care dollar, thereby inducing the public to rely on them in their time of medical need. The public, in looking to the hospital to provide such care, is unaware of and unconcerned with the technical complexities and nuances surrounding the contractual and employment arrangements between the hospital and the various medical personnel operating therein. Indeed, often the very nature of a medical emergency precludes choice. Public policy dictates that the public has every right to assume and expect that the hospital is the medical provider it purports to be." Clark , 68 Ohio St.3d at 444, 628 N.E.2d 46.
* * *
"Unless the patient merely viewed the hospital as the situs where her physician would treat her, she had the right to assume and expect that the treatment was being rendered through hospital employees and that any negligence associated therewith would render the hospital liable." Clark at 445, 628 N.E.2d 46.
Casares v. Mercy St. Vincent Med. Ctr. , 6th Dist. Lucas No. L-15-1313, 2016-Ohio-5542, 2016 WL 4494555, ¶ 20.
{¶ 64} There is no evidence in the record that Riedel had a doctor-patient relationship with Dr. Kalapodis prior to the Lodi emergency room encounter. Riedel testified that Lodi was close to his daughters' home and he was seeking emergency medical care. Riedel had no information that Dr. Kalapodis was not directly employed by Lodi. We agree with appellees that it is hardly unusual for a person seeking emergency medical care to expect to be treated by a physician employed by a hospital, and do not find for appellants on this basis.
{¶ 65} Appellants also assert entitlement to judgment due to Riedel's admission of receipt of the hospital registration forms stating that most of the Lodi physicians were independent contractors including "Attending and Consulting Physicians and members of group practices including, but not limited to Emergency Physicians Medical Group."
{¶ 66} Clark also addressed this situation:
It has been suggested, particularly by the dissent in Pamperin v. Trinity Mem. Hosp. , 144 Wis.2d [188] at 217-218, 222, 423 N.W.2d [848] at 860, 861 [ (1988) ], that hospitals could escape liability *525 for the negligence of their independent contractors by posting signs in their emergency rooms regarding the legal relationship of persons rendering medical assistance. The dissent, however, misconstrues the concept of notice. Such "notice" will rarely provide the patient with the ability to choose at a meaningful time:
"The plaintiff, who by definition is injured and under stress, is relying upon the hospital to provide the services that the hospital has held out that it can provide. The plaintiff's reliance upon the hospital's competence has been demonstrated by her walking (or being wheeled) into the emergency room. Simply informing her that some doctors and staff have a different technical relationship with the hospital than the one she expected does not lessen the reasonableness of her reliance upon the hospital. Even if the patient understood the difference between an employee and an independent-contractor relationship, informing her of the nature of the relationship after she arrives is too late . The purpose of any notice requirement is to impart knowledge sufficient to enable the plaintiff to exercise an informed choice. The signs suggested by the dissent are too little, too late." Note supra, 1990 Wis.L.Rev. at 1147.
(Emphasis added.) Clark , 68 Ohio St.3d at 446, 628 N.E.2d 46, fn. 1. We agree with the court's observation in Clark because we do not find a vast difference between a sign in an emergency room and the signature of the boilerplate emergency room documentation while suffering from intense pain.
{¶ 67} We find that the record contains substantial competent evidence to support the jury's finding of liability by estoppel in this case upon which reasonable minds could reach difference conclusions. The third assigned error is without merit.
D. Vicarious Liability and Estoppel
{¶ 68} Lodi offers that it is entitled to a new trial in the event this court overrules the third assigned error. As we have determined that the third assigned error lacks merit, this assignment of error is moot.
IV. Conclusion
{¶ 69} The trial court's order is affirmed.
TIM McCORMACK, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR

Citing Iames v. Murphy , 106 Ohio App.3d 627, 633, 666 N.E.2d 1147 (1st Dist.1995), citing Mast v. Doctor's Hosp. N. , 46 Ohio St.2d 539, 350 N.E.2d 429 (1976), and Slivka v. C.W. Transport, Inc. , 49 Ohio App.3d 79, 550 N.E.2d 196 (8th Dist.1988).

Citing Iames at 933, 666 N.E.2d 1147 ; Reeves v. Healy , 192 Ohio App.3d 769, 2011-Ohio-1487, 950 N.E.2d 605, ¶ 34 (10th Dist.).

Citing Cooper , 11th Dist. Lake No. 2010-L-141, 2011-Ohio-6847, 2011 WL 6938587, at ¶ 24.

" 'No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision with respect to such benefits.' " Jones at ¶ 24, quoting R.C. 2744.05(B)(1).

The statutory transition was effective on April 11, 2003.